IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JACLYN CABALES and                    )
JONATHAN CABALES,                     )
                                      )
                    Plaintiffs,       )
                                      )
v.                                    )
                                      )
ALBERT E. MORGAN, D.C., ARCTIC        )
CHIROPRACTIC BETHEL, LLC, and         )
CHRISTOPHER F. TWIFORD, D.C.          )
                                      )
                    Defendants.       )  Case No. 4BE-13-00082 CI
_____)

FILED IN TRIAL COURTS
FOURTH DISTRICT
2014 FEB 25 PM 5:04

## PLAINTIFFS' OPPOSITION TO DEFENDANT TWIFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' case is not simply about the moment Jaclyn's vertebral artery was damaged, it is about how the "doctors of chiropractic," with their superior knowledge of the mechanisms of injury and the risk of stroke responded to Jaclyn's emergency. Morgan, suspecting Jaclyn had suffered an aneurism, moved Jaclyn into a back room with a closed door,[1] and continued to see other patients.[2] Simply put: Jaclyn could not bet her life on Morgan's response to an emergency. So, what about Twiford, the D.C. "front office employee" Brooke Arnett immediately called in this emergency? Twiford's motion asks this Court to make findings of fact that Twiford's response to Jaclyn's emergency was fault-free and had no causal relationship whatsoever to Jaclyn's near-fatal strokes. But when the full record is considered, it is clear that a reasonable D.C. under the circumstances would have done more than Twiford did and Twiford's negligence was a substantial factor in the injuries Jaclyn suffered. Twiford is not

ʝstman Law Office
ɪTTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[1] See **Exhibit A**, Jaclyn Cabales' January 20, 2014 Deposition at pages 68-69.
[2] Id. at 63 and 68.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

1

**Exhibit DD**
**1 of 100**

entitled to summary judgment on the question of his liability. Plaintiffs ask that Twiford's motion for partial summary judgment be denied.

## I.    TWIFORD IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE FACTS CONSTRUED IN A LIGHT MOST FAVORABLE TO THE PLAINTIFFS

### A.    Chiropractors Have Been Aware of the Risk of Artery Damage and Stroke for a Long Time

Jaclyn suffered a 90% stenosis of her right vertebral artery as a result of Morgan's manipulation.[3] A stenosis is a stricture or an abnormal narrowing of the blood vessel. When the artery is thus damaged, the blood supply to the brain is affected and leads to a stroke.

Chiropractors have been aware of the risk that neck manipulation can damage the vertebral artery for a long time.[4] For example, in a 1995 case, a chiropractor adjusted an established patient's neck and precipitated a sudden on-set of symptoms in the patient, including nausea, vomiting, dizziness, and visual disturbances.[5] These symptoms were so "unusual" the chiropractor became "greatly concerned" and he responded by calling a neurologist, stating "there was an emergency" and he required an immediate consultation.[6] The chiropractor had various phone calls with his "consultant" for hours.[7] His patient remained in the chiropractic office over 5 hours until a friend picked her up

ʒstman Law Office
ǝTTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[3] See Complaint at paragraph 23 and its attached exhibit A, a copy of a April 6, 2011 MRA, verifying the 90 percent stenosis. Defendants do not dispute the contents of this medical record. See Defendants' answers to paragraph 23 of the Complaint.
[4] See Felton v. Lovett, 388 S.W.3d 656, 659 (Tx. 2012) (Texas Supreme Court summarizing expert testimony presented in a trial in a Texas case).
[5] See Gilinksy v. Indelicato, 894 F.Supp. 86, 87 (E.D.N.Y. 1995).
[6] Id. at 88.
[7] Id. at 87 and 88.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al.*, Case No. 4BE-13-00082 CI

2

**Exhibit DD**

and drove her to another doctor.[8]  The patient was subsequently diagnosed as having suffered a stroke while at the chiropractor's office.[9]

Jaclyn was a regular patient of Twiford's.  Nevertheless, neither Twiford nor Arctic Chiropractic or Morgan, ever informed Jaclyn of the risk that a chiropractor's manipulation of the neck could cause a stroke.[10]  Nevertheless,

> [C]hiropractic neck manipulation can result in vertebral artery dissection and does so in a significant number of cases, and . . . dissection and stroke are known risks of chiropractic treatment that should be disclosed [to patients.][11]

**B.     After Jaclyn's Sudden On-Set of Symptoms, the Arctic Chiropractic Staff and Twiford Were Responding to an Emergency**

On April 2, 2011, shortly after arriving at the Arctic Chiropractic office, Morgan led Jaclyn to the traction table, laid her down, wrapped a cloth around Jaclyn's neck, held the cloth around her neck, and applied a "thrust."[12]  Jaclyn is positive that Morgan adjusted her neck.[13]  Jaclyn immediately had a sudden on-set of symptoms, including repeated vomiting, distortions in her vision, and black areas in her vision.[14]  She describes this sudden on-set of symptoms as quite different than the headache symptoms that had  brought her to obtain chiropractic care.[15]

---

[8] Id.

[9] Id. at 88.  The chiropractor settled the claims his client brought against him in Gilinsky and the remaining litigation proceeded against the consulting neurologist.  Id. at 87 and n. 1.

[10] **Exhibit A** at 169-170.

[11] See Felton, 388 S.W.3d at 663 (summarizing the evidence which caused the Texas Supreme Court to reverse a court of appeals decision in favor of a chiropractor on the chiropractor's failure to disclose the risk of stroke to his patient.)

[12] **Exhibit A** at 46, 57, 62.

[13] Id. at 74.

[14] Id. at 61, 61-62, 62, 66.

[15] Id. at 82-83.

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

3

**Exhibit DD**

Her loss of vision was so profound that later, when she was told to call her husband, she could not dial a telephone because she could no see the number buttons on the telephone.[16]

Brooke Arnett, the woman who worked the "front desk" was "kind of freaking out" from what Jaclyn remembers.[17] In Brooke's own words, she was "alarmed."[18] When Brooke realized Jaclyn was on the adjustment table and vomiting, and Jaclyn said she was "extremely dizzy and losing her sight," Brooke, "alarmed," "called Chris [Twiford] immediately."[19]

The jury will be very interested in Brooke's first reaction. When Brooke became alarmed she did not try to deal with Morgan, the doctor who was *right there*. Instead, Brooke judged it necessary to call Twiford "immediately," despite Twiford being "on vacation" and "4,000 miles away."[20] Brooke responded consistent with Jaclyn's situation being an emergency.

**C. Twiford Instructed: Jaclyn's "Symptoms Require" She "Be Immediately Taken to the Emergency Room."**

Twiford's March 21, 2013 Answer sinks him, but his February 5, 2014 summary judgment motion does not even mention the admissions in his answers. Twiford admits that as soon as he was informed by phone that Jaclyn was "vomiting, dizzy, and had a loss of vision," "he informed the employee [Brooke, who had alerted him] that *these symptoms required plaintiff Jaclyn Cabales to be immediately taken to the ER.*"[21] Brooke confirms she immediately understood Twiford was instructing that Jaclyn be immediately taken to the ER.

---

[16] Id. at 63 and 64.
[17] Id. at 69.
[18] **Exhibit B**, Arnett's April 2, 2011 statement from Arctic Chiropractic's medical records.
[19] Id.
[20] These details are highlighted in Twiford's Motion for Summary Judgment, but Brooke Arnett did not hesitate to call Twiford in this emergency no mater where he was.
[21] See Twiford's March 21, 2013 Answer at paragraph 16. Twiford's February 5, 2014 Answer to the First Amended Complaint at paragraph 16 repeats this key admission.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI*

4

gstman Law Office
.TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

In an email Brooke apparently wrote to Twiford summarizing her understanding of his instructions, she writes: "I asked what we should do," and "[y]ou told me to get her to the hospital ASAP."[22]

Twiford's March 21, 2013 admission that Jaclyn's symptoms *required* Jaclyn to be *immediately taken to the ER* is one of the touchstones of Plaintiffs' case against Twiford. Twiford's admission is crystal clear. He does not say that he instructed Brooke: "Ask Jaclyn, vulnerable from her injury, what she wants to do." He does not say: "Call Jaclyn's husband, and ask him what he wants to do." He does not say: "Brooke, tell Jaclyn what you think she should do." He does not say: "Just wait a while until Jaclyn feels well enough to move." No, upon hearing of her symptoms, including her loss of vision, Twiford, Jaclyn's regular D.C. and the D.C. who operated the office, unambiguously declared that Jaclyn's *symptoms required she be immediately taken to the ER.*

The jury is going to understand what this means. Brooke or Morgan should have followed Twiford's instructions and called an ambulance immediately. If Twiford doubted their compliance, Twiford himself should have called 911.[23] Jaclyn was in no condition to protect herself--her sight was too impaired to even dial the telephone.[24] Twiford, the person

---

[22] Twiford had not produced this email to the plaintiffs, but Arctic Chiropractic has. Arnett's undated email to Twiford is attached as **Exhibit C**, "BoyleLit001." Arnett says she passed this information onto "Morgan" (not plaintiffs) and Morgan told Arnett "something serious is going on and" Jaclyn "needed to go to the hospital." See id.

[23] A doctor can be disciplined, including having his license to practice restricted or worse, for failing to call an ambulance. See In the Matter of Joel Novendstern, 788 N.Y.S.2d 729, 729-730 (A.D.3rd N.Y. 2005) (doctor who failed to call an ambulance for his at-risk patient who faced the risk of shock or cardiac arrest and instead allowed her to be transported to the hospital by her boyfriend in a private car, permanently lost his right to practice outside the hospital).

[24] **Exhibit A** at 63 and 64.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

5

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

**Exhibit DD**
**5 of 100**

Brooke turned to in the emergency, declared what was required:  Immediate transport to the ER.

The jury is going to understand Twiford's admission for what it is:  a chiropractic doctor's expression of his superior knowledge of the potential risk of serious bodily injury from chiropractic care and his judgment that Jaclyn's symptoms required immediate medical attention.

### D.    Twiford's Instructions that Jaclyn be Immediately Transported to the ER Were Not Followed

It is undisputed that Twiford had the authority to instruct "Morgan, [Brooke] Arnett, or any employee of Arctic Chiropractic (Bethel) to immediately call an ambulance to pick up Jaclyn Cabales at the office and transport her to the YKHC ER."[25]  Thus, when Twiford told Brooke that Jaclyn's symptoms *required she be immediately taken to the ER*, Brooke should have done what Twiford said and Twiford should have checked that his instructions were immediately followed.  But Twiford's instructions were not followed and Twiford did not ensure they were followed.[26]

Although Twiford's Memorandum at pages 8-9 argues "substantial compliance" this is not a credible argument supporting summary judgment for Twiford.  Brooke estimates Jaclyn

gstman Law Office
.TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[25] See **Exhibit D**, Arctic Chiropractic's response to request for admission no. 31.
[26] Twiford should have known that his "immediate transport" instruction was not followed, because Brooke did not call Twiford a second time for what might have been hours, even though she was under instructions to accompany Jaclyn to the hospital and stay with her and "update [Twiford] with what was going on."
    Plaintiffs tried to discover the timing of all of Brooke's calls to Twiford (or Twiford's calls to Walter Campbell) on April 2, 2011, but Twiford says he is currently unable to determine the times of his telephone communications that day.  If Brooke called Twiford immediately, Jaclyn remained at Arctic Chiropractic for an hour and a half and Brooke accompanied the Cabales to the hospital, then it could have been hours later when Brooke called Twiford a second time.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

6

stayed at Arctic Chiropractic "an hour and a half."[27] Allowing Jaclyn to languish for an hour and half in some closed back room is not being "immediately taken to the ER." [28]

### E.    Defendants Kept Jaclyn In the Dark About The Danger She Was In

Brooke's first account of what happened is her April 2, 2011 note to Jaclyn's file.[29] In that note she does not indicate that Jaclyn was told that Twiford stated that *her symptoms require she be immediately transported to the ER*.  If the jury is to read Arnett's April 2, 2011 note as her effort to document "everything," it is clear that Brooke did <u>not</u> inform Jaclyn or her husband of Twiford's concern or instructions that she be immediately transported to the ER because of her symptoms.  Jaclyn confirmed at her January 20, 2014 deposition that she has no memory of Brooke telling her that she called Twiford or that Twiford told them what to do.[30] Jaclyn also had no memory of Morgan telling her husband what had happened to her or Morgan telling her or her husband his suspicion that she had suffered an aneurism.[31]  Thus, while Jaclyn was languishing for an hour and a half at the chiropractic's office, she was not told the risk that she was in.  Even more importantly, Jaclyn was extremely vulnerable.  Her failing to see the numbers on the phone, her visual disturbances, and her seeing "black" in her field of vision were signs blood had been cut off from her brain.  A jury could very well find that

---

[27] See **Exhibit B**, Arnett's April 2, 2011 statement.

[28] Twiford tries to blame Jaclyn for not being immediately transported to the ER, but he has not explain how Jaclyn's supposed conduct, makes him fault free or a proximate cause of him failing to ensure his instructions are followed.  A non-movant is not required to respond when a movant's argument does not justify why he is entitled to judgment *as a matter of law*.  Even if the Court wishes to address the ambulance issue further, plaintiffs detail in part II.B.2 why Twiford misstates the record and the "undisputed facts."

[29] Walter Campbell instructed Brooke to document "everything."  See **Exhibit E**, Arctic Chiropractic's response to interrogatory no. 14.

[30] **Exhibit A** at 69-70.

[31] Id. at 78 and 137-138.

ⱼstman Law Office
⸗TORNEYS AT LAW
P.O. BOX 585
ȝETHEL, ALASKA
99559
(907) 543-2972

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
<u>Cabales v. Albert E. Morgan, et al.</u>, Case No. 4BE-13-00082 CI

7

**Exhibit DD**

(a) Jaclyn was not informed of Twiford's concern or instructions; (b) Jaclyn was not informed of Morgan's aneurism diagnosis; and (c) Jaclyn had already suffered an injury which was already significantly affecting her brain.

Twiford admits he telephoned Arctic Chiropractic's Walter Campbell after Brooke's call alerting him to Jaclyn's sudden on-set of symptoms.[32] But Twiford did not even attempted to talk to Jaclyn or Morgan on April 2, 2011.[33] A jury could find that a reasonably prudent chiropractor, particularly the one who was Jaclyn's regular doctor, would have spoken directly to Jaclyn about her symptoms and his concerns especially since Twiford knew Jaclyn was at the Arctic Chiropractic office when Brooke had him on the phone and Brooke was just someone who sat at the front desk and scheduled patients.

### F.     Twiford Instruction that a Arctic Chiropractic Staff Member Go with Jaclyn to the Hospital and Inform the Hospital of Jaclyn's Condition Was Not Followed

In his Answer, Twiford states, he "did tell the staff to make sure that [Jaclyn] was transported to the local emergency room and for a staff member to go with her to inform the hospital of her condition."[34] Brooke did not comply with Twiford's instructions. For example, in her earliest written account in which she was to document "everything," Brooke says "we checked her in" to the ER, but she does not say she informed the hospital of anything.[35] Then, in Brooke's email to Twiford, a different account, she says she called Twiford "from the hospital stating [Jaclyn] was there."[36] In this second account, Brooke does not say she informed the hospital of anything. Instead, she says she told Twiford that she would call Jaclyn

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[32] See **Exhibit F**, Twiford's response to interrogatory no. 2; **Exhibit G**, Twiford's response to request for admission no. 5.
[33] **Exhibit F**, Twiford's response to interrogatory no. 2.
[34] Twiford's Answer at paragraph 37.
[35] See **Exhibit B**.
[36] See **Exhibit C**.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

8

"after the doctors at YKHC saw her to update you."[37] In saying that she'd get information *from Jaclyn later*, Brooke was doing the opposite of what Twiford had asked. Twiford told Brooke to go the ER with Jaclyn "to inform the hospital of her condition."[38] Brooke's email definitely shows that (a) not only did Brooke <u>not</u> follow Twiford's instructions, but (2) Twiford knew of should have known this when Brooke told Twiford <u>in a call from the hospital</u> that she was going to leave and get an update later from Jaclyn.

Brooke's not following Twiford's instructions undermined Twiford's purpose in giving his instruction in the first place. According to Twiford's interrogatory answer, he told Brooke to go to the hospital with Jaclyn "and advise the YKHC staff on everything that had happened *as Jaclyn might not be able to speak for herself* or present a full history of her headache."[39]

### G. The Fact Twiford Was On the Phone with Brooke While the Cabales and Brooke Were at the Hospital Gave Twiford a Perfect Opportunity to Alert the YKHC as to *Why* Jaclyn's Symptoms Required Her to be Immediately Evaluated by the ER

The fact that Brooke informed Twiford on the phone at the hospital that she was not following his instructions but was going to rely on learning Jaclyn's condition from Jaclyn later is very significant.[40] A jury could very well decide that since Twiford was on the phone while the Cabales were in the ER with Brooke, Twiford himself had the opportunity to talk to the ER personnel directly and explain why he judged that Jaclyn's *symptoms required her to be immediately conveyed to the ER*. In other words, instead of just hearing Brooke tell him she was not doing as he'd instructed, Twiford then and there could have explained by telephone to an ER doctor, that he was Jaclyn's regular chiropractor, Jaclyn's onset of symptoms was sudden, unusual, and alarming, and these symptoms corresponded with how a neck

gstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[37] <u>Id.</u>
[38] See Twiford's Answer at paragraph 37.
[39] See **Exhibit F** (emphasis added).
[40] See **Exhibit C**, Brooke's email to Twiford.

9

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
<u>Cabales v. Albert E. Morgan, et al.</u>, Case No. 4BE-13-00082 CI

manipulation can cause a stroke. Twiford talking to the ER directly about his concerns was what a reasonably prudent chiropractor would have done, especially since he was already on the phone when his patient was in the ER. But Twiford did not do this. Twiford <u>knew</u> his instructions were not being followed and he allowed his injured patient, who he believed "might not be able to speak for herself," fend for herself. Twiford passed the buck and hid behind whatever his receptionist thought fit to do, without following up on his original reasons for instructing Jaclyn to be "immediately transported to the ER" because of her symptoms. A jury could very well conclude that Twiford was negligent or reckless in allowing Jaclyn to go to the ER and not ensure that the ER understood what had raised the alarm with Twiford himself in the first place.[41]

A jury could very well find that Twiford didn't give Brooke the instructions he gave Brooke because he merely assumed Jaclyn had the flu. Twiford did not instruct Morgan to document "everything" because he assumed Jaclyn had the flu. Twiford did not call Walter Campbell multiple times on Aril 2, 2011 because he assumed Jaclyn had the flu. A reasonably prudent chiropractor would have shared his real concern that Jaclyn had had a stroke with an ER doctor, since Twiford was already on the phone when the Cabales arrived at the ER.

That the ER was not sufficiently informed of Jaclyn's symptoms is evident from the YKHC ER records dated April 2, 2011. For example, a symptom Twiford knew about prior to his declaring that Jaclyn needed to be immediately transported to the ER was her losing her vision. It was so bad, Brooke had to dial the phone for Jaclyn because Jaclyn "couldn't see." Jaclyn was also seeing "black" while still at the Arctic Chiropractic office. But PAC Alyssa

ɡstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[41] Twiford asserts that Brooke informed him that she spoke with "the initial triage nurse," but Brooke does not support this claim in her April 2, 2011 notes (Exhibit B), her email account to Twiford (Exhibit C), or her January 30, 2014 Affidavit.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al.*, Case No. 4BE-13-00082 CI

10

Perry, PAC, at the YKHC ER on April 2, 2011, did not understand that Jaclyn had any "vision change."[42] Twiford was on the phone with Brooke while the Cabales and Brooke were checking in to the ER on April 2, 2011. Twiford could have asked to speak to an ER doctor then and there and told him or her of his concerns over Jaclyn's loss of vision and why he considered this an emergency. He could also have insisted that Brooke convey this information. But Twiford did not do this and Alyssa Perry, a mere PAC, assumed, relying on less information than what Twiford knew or should have known, that Jaclyn simply had the flu.[43]

Moreover, neither the PAC nor the nurses who treated Jaclyn on April 2, 2011, made any notation about Jaclyn having just had her neck adjusted by a chiropractor, how her sudden on-set of symptoms began immediately after her neck adjustment, about how the chiropractor who had adjusted Jaclyn believed she had suffered a brain aneurism, and about how Jaclyn had to be carried to the car.[44] It does not matter if Jaclyn and her husband say they tried to convey some or all of these details. Twiford did not try to communicate with the ER.[45] If Twiford had spoken to the ER and relayed this information, the ER would have taken Jaclyn's case far more seriously. If Twiford had caused Jaclyn to be conveyed to the ER in an ambulance, Jaclyn's case would have been treated far more seriously. Twiford's involvement with the ER would more likely have gotten the attention of the ER doctor, rather than a nurse or a PAC. Twiford would have been listened to by the ER because Twiford had superior knowledge as Jaclyn's regular chiropractor that her symptoms were cause for alarm and fit the scenario of a possible

Justman Law Office
ITORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[42] See **Exhibit H**, note by A. Perry, PAC, marked 001057.
[43] Id. at 001058.
[44] See **Exhibit H** and **Exhibit I**, April 2, 2011 nursing notes.
[45] **Exhibit F**, Twiford's response to interrogatory no. 9.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

11

stroke.[46]  Twiford also had the authority to instruct Morgan to communicate directly with the ER concerning Jaclyn's condition.[47]  It is for the jury to decide if Twiford was a fault for allowing the YKHC ER to diagnose Jaclyn based on less information than Twiford himself was aware.  The jury could very well find that whatever Jaclyn or her husband reported, Twiford's direct communication with the ER on April 2, 2011 would have changed the course of Jaclyn's series of strokes and the extent of her brain injury.

## II.  TWIFORD HAS NOT DEMONSTRATED HIS ENTITLEMENT TO SUMMARY JUDGMENT AS A MATTER OF LAW

### A.  Twiford Is Not Entitled to Summary Judgment on the Negligent Hire Theory

#### 1.  Twiford Can't Authenticate the Sole Exhibit on Which he Relies

Twiford's first argument is that he is entitled to summary judgment on any "negligent hire" theory, because Arctic Chiropractic was Morgan's "employer" and Morgan was an "independent contractor."[48]  The only evidence Twiford offers of this disputed fact is Twiford's exhibit A, Morgan's 1099 form for 2011.[49]  Plaintiffs object to Twiford's entire line of argument as failing to satisfy Alaska R. Civ. P. 56.  In his response to interrogatory no. 1, Twiford stated, in relevant part:  "I did not participate in the payroll or employee/contractor classification for Arctic Chiropractic in April 2011."[50]  Given this discovery answer Twiford, it is clear that

---

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

[46] Jaclyn Cabales discussed this theory at her deposition.  She believes that Twiford communicating with the ER about his concerns over her symptoms would have been given more "weight" than what she communicated and caught the ER's attention.  See **Exhibit A** at 139.
[47] See **Exhibit D**, Arctic Chiropractic's response to request for admission no. 33.
[48] See Twiford's Memorandum at page 3 and 7.
[49] See id. at page 3 and Twiford's exhibit A.
[50] See **Exhibit F**, Twiford's response to interrogatory no. 1.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al.*, Case No. 4BE-13-00082 CI

12

Twiford has no personal knowledge as to whether Morgan was actually an employee or independent contractor and he cannot rely on Morgan's 1099 form for 2011 to prove anything.[51]

### 2. Twiford Apparently Misrepresents His Status with Arctic Chiropractic

Twiford's next argument is that he was a mere "employee" of Arctic Chiropractic, citing as his sole support a 2006 contract. He then jumps to the conclusion that his status as a "mere employee" necessarily prevents him from being liable for negligent hire.[52] Once again, Twiford's argument does not satisfy Rule 56. His supposed proof that he is a mere employee is a 2006 contract, which on its face, indicates it expired in 2008,[53] long before Plaintiffs' claim arose. Plaintiffs also believe that Twiford's exhibit B misrepresents his status with Arctic Chiropractic. According to Twiford's representations to his insurance adjuster, Twiford is a 5-percent owner of Arctic Chiropractic.[54]

### 3. There Are Ample Facts Supporting Twiford's Negligence in the Selection and Hiring of Morgan

Twiford cites to no case law or public policy as to why he can't be at fault for the hiring or selection of Morgan. The undisputed facts are as follows:

---

[51] Twiford also never explains why Morgan supposedly being an "independent contractor" has anything to do with a viable negligent hire theory. A person can be negligent in hiring and selecting an independent contractor, just as well as an employee, and that act of negligent hiring/selecting is an instance of direct negligence or recklessness by the person doing the hiring or selecting.

    The question of vicarious liability for an independent contactor is a different issue and that separate issue implicates the "non-delegable duty doctrine." If a person has a non-delegable duty, the "independent contractor" defense is unavailable. None of these issues are properly framed in Twiford's motion, although he makes reference to all of these distinct terms in his briefing.

[52] See Twiford's Memorandum at 3 and 7-8.

[53] See exhibit B attached to Twiford's Memorandum at page 1, paragraph I.A. (contract's term is 2 years, commencing May 01, 2006.)

[54] See **Exhibit J**, page "0022" from Arctic Chiropractic's Initial Disclosures.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
<u>Cabales v. Albert E. Morgan, et al.</u>, Case No. 4BE-13-00082 CI

13

ʝstman Law Office
ɪTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

(a)     Twiford had a say whether Morgan was utilized at the Bethel office;[55]

(b)     Twiford's approval was required before Morgan could work at the Bethel office;[56]

(c)     Twiford's Answer at paragraph 8 admits that he approved the use of Morgan for chiropractic care;

(d)     Twiford approved the use of Morgan, knowing Morgan wrapped a cloth around a patient's neck to adjust the neck, even though this was a technique Twiford himself did not employ;[57]

(e)     Twiford approved of Morgan using a cloth or handkerchief to adjust the necks of Arctic Chiropractic patients;[58]

(f)     Arctic Chiropractic denies it approved the use of Morgan using a handkerchief to adjust the neck of a patient;[59]

(g)     Morgan got his training as a chiropractor 40 years ago, meaning that there is a question whether he was educated as to risks or safer techniques that have been part of the literature since he was trained;

(h)     Twiford claims that Morgan had "*nothing but* glowing recommendations from all of the patients at each of [the Arctic Chiropractic] offices" who'd utilized Morgan, while Arctic Chiropractic discloses a patient's complaint about Morgan,[60] indicating that further discovery is warranted on the sufficiency of Twiford's vetting of Morgan.

---

[55] **Exhibit G**, Twiford's response to request for admission no. 15.
[56] Id., Twiford's response to request for admission no. 16.
[57] Id., Twiford's response to request for admission no. 18, 8 and 14.
[58] Id., Twiford's response to request for admission no. 19.
[59] **Exhibit D**, Arctic Chiropractic's response to request for admission no. 18.
[60] Compare Twiford's response to interrogatory no. 3 (**Exhibit F**) with Arctic Chiropractor's response to request for admission no. 22 (**Exhibit D**).

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

14

gstman Law Office
\TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

(i)  Twiford discloses no reservations about hiring Morgan in discovery, but Arctic Chiropractic indicates that Twiford did have a reservation about whether Morgan would take orders from younger staff in the office who were more familiar with office policy,[61] a potential conflict which possibly explains Arnett calling Twiford "immediately" on April 2, 2011 and Twiford not speaking directly with Morgan at any time on April 2, 2011;[62]

(j)  Twiford may not have inquired whether Morgan had malpractice insurance before approving of his use;[63] and

(k)  Morgan did not have assets or malpractice insurance[64] and Twiford did not request that Morgan be added to a policy that would have provided liability coverage while he was treating patients at the Bethel office.

These undisputed facts present an ample basis for allowing the jury to consider a negligent hire claim against Twiford.[65]  In no way is Twiford entitled to summary judgment on Twiford's responsibility for Morgan's use.  Without Twiford's approval, it is clear Morgan would not have worked at the Bethel office.

**B.  Twiford Is Not Entitled to Summary Judgment on the Negligent Supervision Claim**

**1.  The "Substantial Compliance" Argument Is Meritless Because Jaclyn Was Not Immediately Transported to the ER**

---

[61] Compare Twiford's response to interrogatory no. 3 (**Exhibit F**) with Arctic Chiropractic's response to request for admission no. 16 (**Exhibit D**).

[62] See **Exhibit G**, Twiford's response to request for admission nos. 5 and 6.

[63] See **Exhibit J**, page 0021 from Twiford's Initial Disclosures.

[64] See id., page 0021 and 0022 from Twiford's Initial Disclosures.

[65] Negligent hire is a theory Plaintiffs seek to add in their proposed Second Amended Complaint.  The fact that Twiford now presumes to file a motion for partial summary judgment on this theory means, in all fairness, that Twiford should not oppose Plaintiffs' motion to amend their complaint.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

15

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

Twiford argues that he could not have negligently or recklessly supervised his staff because his instructions were "substantially complied" with. Twiford is wrong. As a threshold matter, he fails to come clean about what his "instructions" were, so his "compliance" argument collapses in on itself. As admitted in his answer, Twiford told Arnett that Jaclyn's symptoms required her to be immediately taken to the ER. See part I.C., detailing Twiford's instruction. Jaclyn was not immediately taken to the ER; she was moved to a back room in the office and Arnett herself says Jaclyn remained in the office for an hour and a half. See part I.D, detailing the failure to comply with Twiford's instruction. Clearly, Twiford failed to ensure his instruction re immediate transport to the hospital was followed.

### 2. Jaclyn Strongly Disputes Twiford's Assertions Alleging Jaclyn Declined an Ambulance Before her Husband Arrived

Relying on Brooke's January 30, 2014 Affidavit, Twiford asserts: "Jaclyn refused the offer of an ambulance and decided to wait for her husband."[66] Jaclyn's deposition testimony contradicts Brooke's January 30, 2014 Affidavit, precluding summary judgment.

Jaclyn testified that after her neck adjustment by Morgan she was sick to her stomach and she was dizzy and either Morgan or Brooke "decided they should give me the phone to call home."[67] She was *told* by either Morgan or Brooke to call her husband.[68] But Jaclyn was unable to dial the phone because she "couldn't see" the numbers on the phone's dial pad.[69] Nevertheless, she says she "remembers" this time frame[70] and she insists she has no memory of being asked about calling an ambulance <u>prior to her husband's arrival</u>.[71] Jaclyn says she was

---

66 See Twiford's Memorandum at page 5.
67 **<u>Exhibit A</u>** at 63.
68 <u>Id</u>.
69 <u>Id</u>. at 63 and 64.
70 <u>Id</u>. at 65.
71 <u>Id</u>.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
<u>Cabales v. Albert E. Morgan, et al.</u>, Case No. 4BE-13-00082 CI

16

ɔstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

offered a "choice" of being driven in an ambulance or driving in her car to the hospital, but that was only after her husband's arrival.[72] Jaclyn says "it had been some time" before she was given the choice between driving to the ER or having an ambulance and by then her husband was there to drive her to the ER.[73]

Moreover, the claim in Brooke's January 30, 2014 Affidavit that Jaclyn was offered an ambulance prior to her husband's arrival is not consistent with Brooke's two previous accounts of what happened. This means that a jury could very well choose to disbelieve Arnett's January 30, 2014 Affidavit as a concoction of the defense attorneys,[74] rather than an accurate summary of what happened/when.

The inconsistencies of Brooke's various statements is clear, when all of Brooke's statements are compared. Brooke did not claim Jaclyn "did not want to call 911" when Brooke first described what had happened on April 2, 2011[75] and was told to document "everything."[76] Indeed, Brooke's April 2, 2011 statement says nothing about "calling 911" or calling an ambulance being discussed with Jaclyn. Brooke's April 2, 2011 statement also says nothing about Brooke suggesting that she thought 911 should be called; that "new" fact does not appear until her January 30, 2014 Affidavit.[77] Jaclyn explains in her deposition that an ambulance was eventually mentioned, but only after Jaclyn's husband arrived to take her to the ER.

Brooke's January 30, 2014 Affidavit is not only inconsistent with Brooke's earliest account of what happened, it is inconsistent with Brooke's email to Twiford summarizing to

---

[72] Id. at 64-65 and 65.
[73] Id. at 65
[74] The affidavit reads as if an attorney wrote it, rather than Brooke Arnett.
[75] See **Exhibit B**.
[76] See id. See also **Exhibit E**, Arctic Chiropractic's response to interrogatory no. 14.
[77] See paragraph 24 of Arnett's January 30, 2014 Affidavit, originally filed by Arctic Chiropractic.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI*

17

gstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

**Exhibit DD**
**17 of 100**

Twiford what happened.  In her email summary of events, Brooke merely says:  "I asked [Jaclyn] if she needed us to call an ambulance."  Brooke's email does <u>not</u> document any answer by Jaclyn and perhaps Jaclyn gave no answer because Arnett says Jaclyn was "dry heaving and shaking."  The only thing Arnett's email account reports Jaclyn as saying is that "[Jaclyn] asked us to call her husband."  Thus, Arnett's two statements prior to her January 30, 2014 affidavit said nothing about Jaclyn saying "she did not want to call 911" prior to Jonathan Cabales' arrival.  This entirely <u>new claim</u> only appears when Arnett is asked by defense counsel to supply a January 30, 2014 affidavit.  A jury should be free to decide if Arnett's prior statements contradict or discredit her January 30, 2014 Affidavit.[78]

### 3. Even if Jaclyn or Her Husband Had Declined an Ambulance it Would Not Entitle Twiford to Summary Judgment as the Undisputed Facts Show that Jaclyn Was Left in the Dark About The Danger She Was In

Twiford has not presented a record of "undisputed facts" as to what the Plaintiffs supposedly did wrong under the circumstances presented to them.  For example:  Brooke's first version of events is her April 2, 2011 note to Jaclyn's file.[79]  In that note, Brooke  <u>does not say</u> that Jaclyn was told that Twiford stated that *her symptoms require she be immediately transported to the ER*.  If the jury is to read Arnett's April 2, 2011 note as her effort to document "everything," it is clear that Brooke did <u>not</u> inform Jaclyn or her husband of Twiford's concern or instructions that she be immediately transported to the ER because of her symptoms.   Jaclyn confirmed at her January 20, 2014 deposition that she has no memory of Brooke telling her that she called Twiford or that Twiford told them what to do.[80]

---

[78] Other parts of the record show that Jaclyn couldn't have "called 911" because her vision was too poor to even dial a phone.  See **Exhibit A** at 63 and 64.
[79] Walter Campbell instructed Brooke to document "everything."  See **Exhibit E**, Arctic Chiropractic's response to interrogatory no. 14.
[80] **Exhibit A** at 69-70.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
<u>Cabales v. Albert E. Morgan, et al.</u>, Case No. 4BE-13-00082 CI

18

ɔstman Law Office
ITORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

Jaclyn also had no memory of Morgan telling her husband what had happened to her or Morgan telling her or her husband his suspicion that she had suffered an aneurism.[81]  Thus, Twiford's assertion that "Jaclyn did not want to call 911" does not get Twiford off the hook because whatever Jaclyn did or did not do relative to an ambulance has to be judged from the context of (a) not being informed of Twiford's instructions; (b) not being informed of Morgan's aneurism diagnosis; and (c) Jaclyn having suffered an injury which had was already significantly affecting the functioning of her brain.

    **4.      Independently, Twiford Does Not Show In His Motion How Plaintiffs' Supposed Comparative Fault Prevents Twiford From Being Liable For Failing to Ensure that Jaclyn Was Immediately Conveyed to the ER**

If Twiford had called 911 himself or had made sure that Jaclyn was immediately conveyed to the ER, Jaclyn would have gotten better help more quickly "waiting" wouldn't have been an option.

But there are other profound reasons why Twiford has failed to show he is entitled to summary judgment as a matter of law. First, Twiford should not be able to shield himself based on what Jaclyn supposedly thought was best when Jaclyn had not been told Twiford already judged that Jaclyn's symptoms required her to be immediately conveyed to the ER and Morgan suspected she had had an aneurism.  Twiford had superior knowledge as the danger of those symptoms and the risk of stroke related to chiropractic care.[82]  Twiford cannot escape liability because his patient who knew less than he did of the potential danger she was in supposedly waited for her husband to arrive.  Twiford operated that Bethel office.  His authority included compelling Morgan, Arnett, or any employee of Arctic Chiropractic to immediately call an

ɔstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[81] Id. at 78 and 137-138.
[82] See parts I.A and I.C of this Opposition.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

19

ambulance.[83]  Twiford's failure to ensure his instructions of immediate transport were followed are a substantial factor and a but/for cause of the delay in Jaclyn receiving treatment. Twiford's inactions are also a substantial factor and a but/for cause in the ER not treating Jaclyn as anything other than a flu patient.[84]

Second, Jaclyn's condition was deteriorating rapidly.  Jaclyn described herself as being "in shock . . . [a]nd sick--very sick."[85]  She was an Arctic Chiropractic patient, injured on the business premises, shut away in a back room.  She had an injury to her blood supply to her brain, as evidenced her seeing "black," her loss of vision, her inability to dial a phone, and inability to walk on her own.   Jaclyn depended on Twiford and the other Defendants to properly and timely respond to the emergency she was in.  Twiford cannot credibly argue "it was someone else's problem;" he oversaw the operation of that office, was called in by Brooke and gave instructions as to what was required to be done.  He cannot shift his responsibility to the person he is in a special relationship to protect.

Third, Twiford's motion begs the question whether comparative fault can even apply to Jaclyn (a) because of her extreme vulnerability; and (b) the special duties her health care providers owed her.  Twiford's motion does not even establish the legal principle that comparative fault applies in a medical malpractice context.[86]

---

[83] **Exhibit D**, Arctic Chiropractic's response to request for admission 33.
[84] See also the arguments made in part I.G of this Opposition.  The court is required to draw all reasonable inferences in favor of the Plaintiffs. See Ardinger v. Hummell, 982 P.2d 727, 730 (Alaska 1999).
[85] **Exhibit A** at 64.
[86] This appears to be an issue of first impression in Alaska.  In John's Heating Service v. Lamb, 46 P.3d 1024, 1042-1043 (Alaska 2002), the Court mentioned in passing that a patient may not be liable for comparative negligence in a malpractice situation.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment* Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

20

ṛstman Law Office
TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

With all of these legal points not even contemplated by Twiford's motion, he has not established his entitlement to judgment as a matter of law. Under these circumstances, plaintiffs do not have an obligation to even respond and summary judgment must be denied.[87]

### 5. A Jury Could Reasonably Find that the ER's Failure to Properly Diagnose Jaclyn on April 2, 2011 Was Because of Information Withheld by Twiford, Including Twiford's Judgment that Jaclyn's Symptoms Required Immediate Emergency Care

An additional theory against Twiford is that he failed to ensure compliance with his instructions that "a staff member go with [Jaclyn] to inform the hospital of her condition . . ."[88] It is absolutely clear that this instruction of Twiford's was not complied with.[89] Indeed, during the course of discovery, Plaintiffs now know that Twiford was already on the telephone with Arnett when the Cabales were at the ER and therefore had the time and the opportunity to ask to speak with an ER doctor and explain why he believed Jaclyn's symptoms required a work-up by the ER, but Twiford did not bother to speak with the ER.[90]    In response to this undisputed factual record, Twiford tries to pass the buck and argue that Jaclyn and her husband somehow assumed his obligation to properly inform the ER.

Twiford argues at page 5 of his Memorandum that Jaclyn told someone in a screening area of the YKHC ER that after a manipulation, she immediately began to vomit, became dizzy

---

[87] See Capolicchio v. Levy, 194 P.3d 373, 380 (Alaska 2008) ("A summary judgment movant is obligated to point to undisputed facts or admissible evidence establishing a prima facie case entitling the movant to judgment as a matter of law. If the movant does not meet that burden, the movant is not entitled to summary judgment even if the opposing party does nothing."); B.R. v. State, 144 P.3d at 433 ("The moving party has the 'entire burden' of proving that it is entitled to summary judgment. That is, unless the moving party points to undisputed facts or admissible evidence establishing a prima facie case entitling it to summary judgment as a matter of law, the opposing party has no obligation to produce evidence supporting its own position.")
[88] See Twiford's Answer at paragraph 37.
[89] See part I.F of this Opposition.
[90] See part I.G of this Opposition.

ɔstman Law Office
ɪTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

21

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al.*, Case No. 4BE-13-00082 CI

and was having trouble seeing.[91]  Twiford also cites to Jonathan Cabales' testimony that he accompanied Jaclyn to the hospital on April 2, 2011 and he told a nurse that it was possible Jaclyn had a possible aneurism.  Twiford argues that because of this testimony, "the hospital was on notice that Jaclyn's condition may have been more serious than the flu."[92]  Arguing the "hospital was fully advised" of the fact of a manipulation, "the symptoms," and a suspected "aneurism," Twiford argues that his failure to ensure that the ER was properly informed was not a but/for cause of plaintiffs' injuries.[93]  At most, Twiford is explaining an argument he can make to the jury.  He has not presented a case of "undisputed" facts, justifying summary judgment.[94]

Twiford can't establish that he is without liability just because the Cabales tried and failed to communicate with an ER nurse and a PAC.  As plaintiffs have already detailed, the ER nurse records did not document the symptoms that were so alarming, such as Jaclyn seeing "black" or being unable to dial the phone.[95]  The ER records do not even make a note of Jaclyn being at the chiropractor, having her neck manipulated, or Morgan suspecting an aneurism.[96]  Twiford, already on the phone when the Cabales were at the ER, could have asked to speak to an ER doctor.  As Jaclyn's regular chiropractor, he had judged that her symptoms required emergency evaluation and he could have conveyed his judgment and explained his special

---

ꬰstman Law Office
ꞮTTORNEYS AT LAW
P.O. BOX 585
BETHEL., ALASKA
99559
(907) 543-2972

[91] See also **Exhibit A** at page 75-76.
[92] Twiford's Opposition at page 9.
[93] Twiford's arguments as to what the "hospital" knew fails to point out that the Cabales, without Twiford's in-put only got to see a nurse and a PAC.  Twiford's arguments begs the question of whether the utilization of an ambulance or a call by Twiford would have gotten the attention of an ER doctor, better equipped to give credit to the possibility Jaclyn had a stroke and was at risk of additional strokes.
[94] The issue of proximate cause is normally a question for the jury.  See Dura Corp. v. Harned, 703 P.2d 396, 406 (Alaska 1985).
[95] See part I.G of this Opposition.
[96] See **Exhibit H** and **Exhibit I**.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
*Cabales v. Albert E. Morgan, et al.,* Case No. 4BE-13-00082 CI

22

knowledge of the risks to an ER doctor. Just like the arrival of an ambulance would have more successfully gotten the ER's attention, Twiford communicating his judgment and concerns to an ER doctor, would have gotten Jaclyn more attention so she would not have been treated just as a woman with the flu. Twiford was alarmed by Jaclyn's symptoms, such as her loss of vision. His direct communication with the ER could have made a difference in preventing the severity of Jaclyn's first stroke or the fact of her second stroke. These are all questions of breach and causation for the jury to decide.

## III.    Plaintiffs Object to Twiford's Effort to Seek Summary Judgment on the Theory His Conduct Did Not Make a Difference when YKHC Has Not Been Served and Its Status Is in Limbo

Plaintiffs wish to make a record on one remaining issue. Twiford's motion is not fairly presented under the procedural circumstances of this case. Twiford moved to allocate fault to YKHC and the Court denied Twiford's motion without prejudice because Twiford never bothered to propose a claim for allocation against YKHC. Arctic Chiropractic was given permission to join YKHC for purpose of allocation of fault, but Arctic Chiropractic has apparently made no effort to actually serve YKHC.[97] Accordingly, YKHC is presently not a party.

Any effort by Twiford to argue that his acts or omissions would have made no difference to how the YKHC diagnosed Jaclyn on April 2, 2011 should have waited until YKHC was a party, so YKHC's counsel would know what claims were actually at stake when the YKHC witnesses are deposed and YKHC could be a party to any summary judgment briefing concerning whether Twiford's actions would have made a difference in more timely

gstman Law Office
.TTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

---

[97] YKHC has filed no notice of proof of service on YKHC to date.

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

23

diagnosing Jaclyn. Accordingly, denial of Twiford's motion is appropriate as it raises better left to the timeframe after YKHC's joinder.

## CONCLUSION

It is very clear that Twiford's instructions were not complied with. Moreover, discovery shows that Twiford was on the phone when Jaclyn was at the ER on April 2, 2011, yet he chose not to talk with a YKHC doctor and inform the doctor of his judgment that Jaclyn's symptoms required her to immediately evaluated by the ER. Under the circumstances detailed in Plaintiffs' Opposition, a reasonable juror could conclude Twiford was both at fault and a proximate cause of Jaclyn not being properly and timely diagnosed. Plaintiffs ask that Twiford's motion for partial summary judgment be denied.

Dated this _26_ day of February 2014 in Bethel, Alaska.

ANGSTMAN LAW OFFICE
Attorneys for Plaintiffs

By: _____
Myron Angstman
ABA No.: 7410057

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was mailed this 26 day of February, 2014 to:

Michael Hanson
Call, Hanson & Kell, P.C.
413 G Street
Anchorage, AK 99501-2126

Robert J. Campbell
Caliber Law Group
P.O. Box 1303
Barrow, AK 99723

And sent via email to :

Dennis E. Boyle
Boyle Litigation
4660 Trindle Road, Suite 102
Camp Hill, PA 17011

By: _____
Angstman Law Office

Angstman Law Office
ATTORNEYS AT LAW
P.O. BOX 585
BETHEL, ALASKA
99559
(907) 543-2972

*Plaintiffs' Opposition to Defendant Twiford's Motion for Partial Summary Judgment*
Cabales v. Albert E. Morgan, et al., Case No. 4BE-13-00082 CI

24

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JACLYN CABALES and JONATHAN      )
CABALES,                         )
                                 )
                Plaintiffs,      )
                                 )
v.                               )
                                 )
ALBERT E. MORGAN, D.C.,          )
ARCTIC CHIROPRACTIC BETHEL,      )
LLC, and CHRISTOPHER F.          )
TWIFORD, D.C.,                   )
                                 )
                Defendants.      )
_____)

Case No. 4BE-13-00082 CI

VIDEO DEPOSITION OF JACLYN A. CABALES

January 20, 2014

APPEARANCES:

        FOR DEFENDANT          MR. MICHAEL J. HANSON
        DR. TWIFORD:           Call & Hanson
                               Attorneys at Law
                               413 G Street
                               Anchorage, Alaska 99501
                               (907) 258-8864


        FOR DEFENDANT ARCTIC   MS. TYRA B. HORVATH
        CHIROPRACTIC BETHEL:   Boyle Litigation
                               4660 Trindle Road,
                                Suite 102
                               Camp Hill, PA 17011
                               (717) 737-2430


        FOR THE PLAINTIFFS:    MR. JOHN P. CASHION
                               MS. SAMANTHA CHEROT
                               Cashion Gilmore
                               421 1st Avenue,
                                Suite 247
                               Anchorage, Alaska 99501
                               (907) 222-7932


        ALSO PRESENT:          Mr. Jonathan Cabales

Computer Matrix, LLC                  Phone: 907-243-0668     Exhibit        A
135 Christensen Dr., Ste. 2, Anch., AK 99501    Fax: 907-243-1473    Page    1  of  3    Email: sahile@gci.net

Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 25 of 100

25 of 100

Page 68

1  long.

2  Q   During that time at all, did you suggest hey,

3      it's taking him too long to get here.  I need

4      to get to the hospital.

5  A   I don't think so.

6  Q   Did they move you from the one room to another

7      room during the period you were waiting for

8      Rusty?

9  A   They did.

10 Q   Okay.  Tell me about that.

11 A   After I had been sick and was vomiting in the

12     front, they decided to move me from one of the

13     front rooms to another room.  They said a

14     patient's coming.  Hurry.  We need to move you.

15     I'm like okay.  So I had to be moved, even

16     though I was sick, because a patient was

17     coming.  And I needed help with the moving

18     because every time I stood upright, I felt very

19     sick.  And so I think people kind of guided me

20     where I needed to go.

21 Q   So that was Brooke that guided you?

22 A   I'm sure it was.

23 Q   Sometime along the line, Brooke called Dr.

24     Twiford.  Did you hear any of that

25     conversation?

Computer Matrix, LLC                    Phone: 907-243-0668    Exhibit ___A___
135 Christensen Dr., Ste. 2, Anch., AK 99501    Fax: 907-243-1473    Page __2__ of __3__    Email: sahile@gci.net    Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 26 of 100        26 of 100

Page 69

1   A    I was in the whatever room that they put me in.

2        And I believe my door was kind of shut, too.

3        So I don't know what type of conversations were

4        going on.

5   Q    **Did you know that they called Dr. Twiford on**

6        **April 2nd at any time during that day?**

7   A    I -- actually, I -- I believe I do know that.

8        Brooke was kind of freaking out at the time and

9        dialing.  I don't know.  I imagine it was Dr.

10       Twiford.  But she was telling what -- who I was

11       and what was going on.

12  Q    **So you have some recollection of hearing a**

13       **conversation?**

14  A    I actually do.  I -- yeah.  Sorry about that.

15  Q    **What do you recall?**

16  A    Just -- just that part.

17  Q    **That she was telling somebody that you were**

18       **there and that you were sick?**

19  A    Yes.

20  Q    **Okay.  Did she ever say to you, at any time**

21       **during April 2nd, 2011, I called Dr. Twiford**

22       **and he told us to do anything?**

23  A    I don't recall her saying that.  But she might

24       have said it after Rusty showed up.  But I'm

25       not sure if she had got off the phone saying

Computer Matrix, LLC                Phone: 907-243-0...  Exhibit___A___
135 Christensen Dr., Ste. 2, Anch., AK 99501   Fax: 907-243-147...  Page  3  of 3   Email: sahile@gci.net

Exhibit DD
27 of 100

Case 3:14-cv-00161-JWS  Document 16-4  Filed 07/29/14  Page 27 of 100

04-02-11

Jaclyn Cabales has been coming into Arctic Chiropractic for headaches that she has been enduring after an episode of standing on her head. For the last week or two, she has been calling saying that even after an adjustment her headaches are persisting; worse. She has said she has woken up in the night with severe headaches and has been taking Aleve. The days of the visits for the last two weeks are: 03-25-11 (Friday), 03-28-11 (Monday), 03-31-11 (Thursday), 04-01-11(Friday), and 04-02-11(Saturday –Where Dr. Albert says he only examined her –I have nothing to contradict that).

She was on the adjustment table getting looked at by Dr. Morgan when she started to vomit. Al rushed and got her a trash can and a cup of water. She said she was extremely dizzy and losing her sight. I became alarmed and called Chris immediately. He stressed that Jaclyn needed to be taken to the hospital and for me to stay with her and update him with what was going on. Also he asked for me to tell Al to document EVERYTHING.

Jaclyn stayed at Arctic Chiropractic for about an hour and a half, because she did not feel well enough to move from the table that she was lying on. Other patients were here so we called her husband to come get her and moved her to another room where she lied down to ease the dizziness. Even after her husband arrived she could not bring herself to move with out dry heaving profusely.

Al and her husband helped carry her to the car and I proceeded to drive with them to the ER. We checked her in. At that point, she still had not regained her vision and was dry heaving and still dizzy.

Al said he followed up with the husband the next day and was told that Jaclyn was resting and doing well.

As of today 04-06-11, I was informed by a co worker of Jaclyn' that since her visit 04-02-11(Saturday) she was diagnosed with having a stroke and aneurism. The doctors here at YK told her family to say their goodbyes and she was taken to anchorage where the doctors said the same thing. Last heard, she was still in intensive care but doing better. Sitting up drinking water and cracking jokes.

– Brooke Arnett

Brooke Arnett:

The patient Jaclyn Cabales had been coming in for a couple of days for
> treatment from a head stand inury to her neck. On one particular day (the
> exact date escapes me), Jaclyn came in stating that her headache was worse
> then usual, and that massages were not seeming to reduce the pain. Dr. Al
> told her to lay on the table and he examed her neck (but did NOT perform an
> adjustment). She said that she had been taking tylenol, and that she was
> feeling nauseous when he continued to ask her questions. I was behind the
> desk and helping another patient, when i began to hear her throw up. I
> rushed from behind the counter to help her. Dr. Al got her a cup of water
> and things spiraled from there. Meaning she moved to a upright position,
> kept dry heaving and continued to feel dizzy and nauseous. This was about
> 10-15 minutes into the appointment. I got on the phone with you, once she
> started throwing up, asking what we should do. You told me to get her to
> the hosiptal ASAP. I told Dr. Al and he said that something serious was
> probably going on and that she needed to go to the hospital as well. I
> asked her if she needed us to call an ambulance because was still dry
> heaving and shaking. She asked us to call her husband. I would say it took
> her husband 20 minutes to get there. She then stated that she was losing
> her vision, or that it was going in and out. Her husband and i tried to
> move her to get her to the hospital but she said she needed to go when she
> was ready and that she could do it by herself. Dr. Al then stated that it
> could be an aneurism. We finally were able to move her the table in another
> room to her car which was probably another 10 minutes. So from the time it
> began to the time she was at the hospital i would say it was an hour to an
> hour and a half. I then called you from the hospital stating she was there
> and that i would call her after the doctors at YKHC saw her to update you.

Exhibit___C___
Page___1___of___1___

BOYLELIT0001

Exhibit DD
29 of 100

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 29 of 100

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## FOURTH JUDICIAL DISTRICT AT BETHEL

| | |
|---|---|
| JACLYN CABALES and | : |
| JONATHAN CABALES, | : |
| **Plaintiffs** | : |
| | : |
| v. | : CASE NO.: 4BE-13-00082 CI |
| | : |
| ALBERT E. MORGAN, D.C., ARCTIC | : |
| CHIROPRACTIC BETHEL, LLC, and | : |
| CHRISTOPHER F. TWIFORD, D.C., | : |
| **Defendants** | : |

### DEFENDANT, ARCTIC CHIROPRACTIC BETHEL, LLC'S
### ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS

**AND NOW** comes the Defendant, Arctic Chiropractic Bethel, LLC, by and through its

counsel, Dennis E. Boyle, Esquire, and the firm of Boyle Litigation, and submits the following

answers to the Plaintiff, Jaclyn Cabales' First Request for Admissions as follows:

**Request for Admission No. 1**:  Please admit that the Arctic Chiropractic medical record dated April

2, 2011 contains handwritten notations by Dr. Morgan indicating that he began "manual therapy ...

15 min." on Jacyln Cabales when she visited the office that day.

**RESPONSE:**

Admitted.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST*
*REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al. Case No. 4BE-13-00082 CI*
*Page 1 of 21*

**Request for Admission No. 2**:  Please admit that it is unlikely Dr. Morgan would have circled the treatment description "manual therapy ... 15 min." before his physical examination  or treatment of Jaclyn began on April 2, 2011.

**RESPONSE:**

     Admitted.

**Request for Admission No. 3**:  Please admit that Dr. Morgan's Arctic Chiropractic's records dated April 2, 2011 show that Morgan believed that Jaclyn had suffered a "NSAID reaction" and needed to go to the hospital.

**RESPONSE:**

     Admitted.

**Request for Admission No. 4**:  Please admit that Defendant Twiford did not personally speak with Dr. Albert Morgan on April 2, 2011.

**RESPONSE:**

     Objection.  Arctic objects as Arctic is/was not a party to the above-described conversation.  Without waiving the objection, Arctic cannot admit to the occurrence or non-occurrence of a conversation it was not a party to.  Plaintiffs should direct such admission to either of the parties identified in their request.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 2 of 21

**Request for Admission No. 5**:  Please admit that the first time Defendant Twiford spoke to Dr. Morgan about Jaclyn following her April 2, 2011 appointment, was on April 3, 2011.

**RESPONSE:**

Objection.  Arctic objects as Arctic is/was not a party to the above-described conversation. Without waiving the objection, see response to Request for Admission No. 4.


**Request for Admission No. 6**:  Please admit that Dr. Morgan told you that he had already begun his manual therapy on Jaclyn on April 2, 2011 before Jaclyn began vomiting and complained of a loss of her vision.

**RESPONSE:**

Denied.  Dr. Morgan said he began some level of massage on Ms. Cabales.  He did not perform a manipulation or adjustment on Ms. Cabales.


**Request for Admission No. 7**:  Please admit Dr. Morgan used a handkerchief or other cloth to place Jaclyn's neck into extension or traction when he treated her on or about April 2, 2011.

**RESPONSE:**

Denied.  Dr. Morgan said he performed light muscle work on Ms. Cabales and described Myofascial Release which is a massage technique used to release scar tissue from muscles by massaging and stretching muscles.


*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 3 of 21

**Request for Admission No.8:** Please admit that the manipulation described in request for admission no. 7 is dangerous because it can place too much pressure against the arteries of the patient's neck.

**RESPONSE:**

Objection. Arctic objects to the premise of the question. Without waiving objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 9:** Please admit that the manipulation with a handkerchief described in request for admission no. 7 is not a standard or accepted chiropractic procedure taught by accredited chiropractic schools.

**RESPONSE:**

Objection. Arctic objects to the premise of the question. Without waiving objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 4 of 21

**Exhibit** D
**Page** 4 **of** 21

**Exhibit DD**
**33 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 33 of 100

**Request for Admission No. 10:** Please admit that the manipulation with a handkerchief described in request for admission no. 7 did not involve the degree of knowledge or skill ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**RESPONSE:**

Objection. Arctic objects to the premise of the question. Arctic objects as it calls for legal analysis and conclusion. Without waiving objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 11:** Please admit that the manipulation with a handkerchief described in request for admission no. 7 did not involve the degree of care ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**RESPONSE:**

Objection. Arctic objects to the premise of the question. Arctic objects as it calls for legal analysis and conclusion. Without waiving objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 5 of 21

Exhibit___D___
Page__5__of_21

**Exhibit DD**
**34 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 34 of 100

**Request for Admission No. 12**:  Please admit that Morgan's use of a handkerchief to manipulate Jaclyn's neck on or about April 2, 2011 damaged the artery in her neck.

**RESPONSE:**

Denied.  Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 13**:  Please admit that Dr. Walter Campbell would not have utilized a handkerchief or other cloth to manipulate Jaclyn's neck if he had provided her with chiropractic care.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects to relevance. Without waiving objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 14:**  Please admit under Defendant Twiford's arrangement with you and/or Dr. Walter Campbell, Twiford had a "say" whether you utilized Dr. Albert Morgan as Twiford's "vacation relief doctor."

**RESPONSE:**

Admitted.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 6 of 21

**Request for Admission No. 15:** Please admit that Twiford's agreement was required before Dr. Albert Morgan could act as the "vacation relief doctor" during his absence from Arctic Chiropractic (Bethel) in the beginning of March/end of April, 2011.

**RESPONSE:**

Admitted.


**Request for Admission No. 16:** Please admit that you and/or Twiford had a reservation(s) about using Dr. Morgan as Twiford's "vacation relief doctor" and this explains, at least in part, why Twiford interviewed Morgan 3 times before agreeing to his use.

**RESPONSE:**

Denied. Arctic did not have any reservation about using Dr. Morgan as he was highly recommended by many experienced chiropractors in Anchorage and was working for the President of the State of Alaska Board of Chiropractic Examiners. Arctic does not believe Dr. Twiford had any reservation, with the exception of whether Dr. Morgan would take orders from younger staff in the office who were more familiar with office policy. However, this concern was alleviated after Dr. Twiford spoke with Dr. Morgan.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST*
*REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al. Case No. 4BE-13-00082 CI*
Page 7 of 21

**Request for Admission No. 17**: Please admit that you were aware that Dr. Morgan used a handkerchief or other cloth to manipulate a patient's neck as part of his treatment techniques.

**RESPONSE:**

Denied. Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 18**: Please admit that you approved the use of Dr. Morgan using a handkerchief or other cloth to manipulate a patient's neck as part of his treatment techniques.

**RESPONSE:**

Denied. Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 19**: Please admit that Dr. Walter Campbell would have allowed Dr. Morgan to use a handkerchief or other cloth to place his neck into extension or traction if Dr. Morgan had acted as his chiropractor.

**RESPONSE:**

Objection. Arctic objects as this request is confusing. Arctic objects to relevance. Without waiving the objection, Dr. Morgan did not perform what is described in this request on Ms. Cabales.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 8 of 21

Exhibit_____D_____
Page___8___of_21_

**Exhibit DD**
**37 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 37 of 100

**Request for Admission No. 20**: Please admit that Jaclyn and/or her insurer was charged more for the same service because she had insurance than if Jaclyn had simply paid for her care from her own pocket.

**RESPONSE:**

Denied. Free services and/or cash discounts were given to those patients enduring financial hardship.

**Request for Admission No. 21**: Please admit that Jaclyn and/or her insurer was charged approximately 3-times for the same service because Jaclyn had insurance than if she had simply paid for her care from her own pocket.

**RESPONSE:**

Denied. See response to Request for Admission No. 20.

**Request for Admission No. 22**: Please admit that you were aware of complaints about Dr. Morgan's patient care prior to April 2, 2011.

**RESPONSE:**

Denied. Dr. Campbell was aware of one complaint about Dr. Morgan where a patient was offended because Dr. Morgan asked her about her menstrual cycle. Dr. Campbell received compliments from patients about Dr. Morgan.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 9 of 21

**Request for Admission No. 23**: Please admit that you were aware of complaints about Dr. Morgan's competence prior to April 2, 2011.

**RESPONSE:**

Denied.  See response to Request for Admission No. 22.


**Request for Admission No. 24**: Please admit that you were aware of complaints or concerns about the sufficiency Dr. Morgan's training as a chiropractor prior to April 2, 2011.

**RESPONSE:**

Denied.  See response to Request for Admission No. 22.


**Request for Admission  No. 25**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan was inadequately trained as a chiropractor.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects as the request calls for legal analysis and conclusion.  Without waiving the objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 10 of 21

**Request for Admission No. 26**:  Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan exhibited skills below the standard of care.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects as the request calls for legal analysis and conclusion.  Without waiving the objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 27**:  Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan was inadequately trained as a chiropractor and exhibited knowledge or skill below the standard of care ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects as the request calls for legal analysis and conclusion.  Without waiving the objection, Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 11 of 21

**Request for Admission No. 28**:  Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of Jaclyn's symptoms, including her vomiting and loss of vision.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects as the request calls for legal analysis and conclusion.  Without waiving the objection, Arctic believes Dr. Morgan did not cause Ms. Cabales' alleged injuries.


**Request for Admission No. 29:**  Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of Jaclyn's subsequent stroke.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects as the request calls for legal analysis and conclusion.  Without waiving the objection, Arctic believes Dr. Morgan did not cause Ms. Cabales' alleged injuries.


*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 12 of 21

**Request for Admission No. 30:** Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of bodily injury to Jaclyn requiring immediate medical attention.

**RESPONSE:**

Objection. Arctic objects to the premise of the question. Arctic objects as the request calls for legal analysis and conclusion. Without waiving the objection, Arctic believes Dr. Morgan did not cause Ms. Cabales' alleged injuries.

**Request for Admission No. 31:** Please admit that Twiford had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to immediately call an ambulance to pick up Jaclyn Cabales at the office and transport her to the YKHC ER.

**RESPONSE:**

Admitted.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 13 of 21

**Request for Admission No. 32**: Please admit that Dr. Walter Campbell had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to immediately call an ambulance to pick up Jaclyn Cabales at the office and transport her to the YKHC ER.

**RESPONSE:**

Admitted. Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore had no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER. Moreover, Dr. Campbell was not called until after the incident.

**Request for Admission No. 33**: Please admit that Morgan was required to follow Twiford's instructions during the time he acted as a vacation relief doctor at Arctic Chiropractic in Bethel.

**RESPONSE:**

Denied. Dr. Morgan would not, and should not, follow instructions against his own clinical judgment.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 14 of 21

**Request for Admission No. 34**:  Please admit that Twiford had the authority to instruct Morgan to communicate directly with the YKHC ER on April 2, 2011 to explain how Jaclyn had been treated at Arctic Chiropractic and to detail her sudden on-set of symptoms.

**RESPONSE**:

Objection.  Arctic objects to the premise of the question.  Without waiving the objection, Ms. Cabales' symptoms were not suddenly on-set.

**Request for Admission No. 35**:  Please admit that Dr. Walter Campbell had the authority to instruct Morgan to communicate directly with the YKHC ER on April 2, 2011 to explain how Jaclyn had been treated at Arctic Chiropractic and to detail her sudden on-set of symptoms.

**RESPONSE**:

Objection.  Arctic objects to the premise of the question.  Without waiving the objection, Ms. Cabales' symptoms were not suddenly on-set.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 15 of 21

Exhibit___D____
Page _15_ of _21_

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 44 of 100

**Exhibit DD**
**44 of 100**

**Request for Admission No. 36**:  Please admit that Twiford had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to deliver a copy of Jaclyn's treatment records to the YKHC ER on April 2, 2011 so the ER could be fully informed of how Jaclyn had been treated at Arctic Chiropractic and her sudden on-set of symptoms.

**RESPONSE:**

Denied.  Arctic believes Ms. Cabales' authorization would have been required pursuant to HIPAA laws.

**Request for Admission No. 37**:  Please admit that Dr. Walter Campbell had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to deliver a copy of Jaclyn's treatment records to the YKHC ER on April2, 2011 so the ER could be fully informed of how Jaclyn had been treated at Arctic Chiropractic and her sudden on-set of symptoms.

**RESPONSE:**

Denied.  See response to Request for Admission No. 36.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST*
*REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 16 of 21

**Request for Admission No. 38**:  Please admit that you believe Walter Campbell was negligent in recommending the use of Dr. Albert Morgan.

**RESPONSE:**

Denied.  Arctic does not believe Dr. Campbell was negligent in recommending the use of Dr. Morgan.  Dr. Morgan was highly recommended by many experienced chiropractors in Anchorage. Moreover, Dr. Campbell personally viewed Dr. Morgan treat patients and he demonstrated good clinical knowledge, acumen, and adjusting.

**Request for Admission No. 39**:  Please admit because of what little Morgan knew of Jaclyn's medical condition, Morgan should not have manipulated Jaclyn's neck using extension or traction.

**RESPONSE:**

Denied.  Dr. Morgan did not perform a manipulation or adjustment on Ms. Cabales.

**Request for Admission No. 40**:  Please admit that Brooke Arnett was negligent in failing to follow Twiford's instructions that Jaclyn be immediately transported to the YKHC ER.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question.  Arctic objects to the use of the word "instructions" as it is a mischaracterization.  Arctic objects as this request calls for legal analysis and conclusion.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 17 of 21

**Request for Admission No. 41**:  Please admit that Brooke Arnett, other employees of Arctic Chiropractic, or another patient had voiced concerns about Morgan's care or competence prior to April 2, 2011.

**RESPONSE:**

Denied.  See response to Request for Admission No. 22.


**Request for Admission No. 42**:  Please admit that following her on-set of symptoms while lying on the treatment table, Morgan had Jaclyn moved from the treatment room to a different room so Morgan could continue to treat other patients.

**RESPONSE:**

Denied.  Ms. Cabales' symptoms were not suddenly on-set.  Ms. Cabales was moved to another table.


**Request for Admission No. 43**:  Please admit that after seeing Jaclyn on April 2, 2012, Morgan took a break from treating patients on April 2, 2011 to search the Internet for information related to drug side effects and adverse reactions.

**RESPONSE:**

Denied.  Arctic has no knowledge as to what, if any, internet searches may have been conducted by Dr. Morgan, the reasons, if any, for any searches that had been conducted or the results of any searches.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al. Case No. 4BE-13-00082 CI*
Page 18 of 21

**Request for Admission No. 44**:  Please admit that Morgan took the time to do his April 2, 2011 Internet search described in request for admission no. 39, but he did not take the time to communicate with the YKHC ER about the treatment Jaclyn received at Arctic Chiropractic or her sudden on-set of symptoms including vomiting and loss of her vision.

**RESPONSE:**

   Denied.  See response to Request for Admission 43.


**Request for Admission No. 45**:  Please admit that Jaclyn's stroke which is the subject of the complaint was not the result of a NSAID reaction.

**RESPONSE:**

   Denied.  NSAID reaction may have caused Ms. Cabales' alleged injuries.


**Request for Admission No. 46**:  Please admit that you believe Morgan was at fault for Jaclyn's injuries because of his acts or omissions on April 2, 2012.

**RESPONSE:**

   Denied.  Arctic does not believe Dr. Morgan caused Ms. Cabales' alleged injuries.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 19 of 21

**Exhibit** ___D___
**Page** _19_ _of_ _21_     **Exhibit DD**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 48 of 100     **48 of 100**

**Request for Admission No. 47**:  Please admit that you believe Twiford was at fault for Jaclyn's injuries which are the subject of her complaint.

**RESPONSE:**

Denied. Arctic does not believe Dr. Morgan caused Ms. Cabales' alleged injuries.  Arctic believes Dr. Twiford acted appropriately.

**Request for Admission No. 48**:  Please admit that you were at fault for Jaclyn's injuries which are the subject of her complaint.

**RESPONSE:**

Denied.  Arctic does not believe Dr. Morgan caused Ms. Cabales' alleged injuries.  Arctic believes Dr. Twiford and Dr. Campbell acted appropriately.

BOYLE  LITIGATION

**Dennis E. Boyle, Esquire**
Alaska Bar No. 1010055
4660 Trindle Road, Suite 200
Camp Hill, PA  17011
Phone:  (717) 737-2430
Fax:  (717) 737-2452
Email:  deboyle@boylelitigation.com

Counsel For:  Arctic Chiropractic Bethel, LLC

Dated:  December 24, 2013

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST*
*REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 20 of 21

## CERTIFICATE OF SERVICE

I hereby certify that on the date written below, a true and correct copy of the foregoing Defendant, Arctic Chiropractic Bethel, LLC's, Answers to Plaintiffs Request for Admissions was served by United States First Class Mail, postage pre-paid, upon those person(s) listed below:

Myron E. Angstman, Esquire
Angstman Law Office
P. O. Box 585
Bethel, AK  99559

Michael J. Hanson, Esquire
Call, Hanson & Kell, P.C.
413 G Street
Anchorage, AK  99501-2126

Penny A. Rogers, Pa.C.P.
Senior Paralegal

Dated:  December 27, 2013

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST REQUEST FOR ADMISSIONS*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 21 of 21

Exhibit___D___
Page_21_ of_21_

Exhibit DD
50 of 100

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## FOURTH JUDICIAL DISTRICT AT BETHEL

JACLYN CABALES and　　　　　　　:
JONATHAN CABALES,　　　　　　　:
　　　　　　Plaintiffs　　　　　　:
　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　: CASE NO.: 4BE-13-00082 CI
　　　　　　　　　　　　　　　　　:
ALBERT E. MORGAN, D.C., ARCTIC　:
CHIROPRACTIC BETHEL, LLC, and　 :
CHRISTOPHER F. TWIFORD, D.C.,　 :
　　　　　　Defendants　　　　　　:

### DEFENDANT, ARCTIC CHIROPRACTIC BETHEL, LLC'S
### ANSWERS TO PLAINTIFFS' FIRST INTERROGATORIES

**AND NOW** comes the Defendant, Arctic Chiropractic Bethel, LLC, by and through its counsel, Dennis E. Boyle, Esquire, and the firm of Boyle Litigation, and submits the following answers to the Plaintiffs' First Interrogatories as follows:

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 1 of 21

**INTERROGATORY NO. 1:** Please state all facts supporting your claim, if any, that you are not vicariously liable for the acts or omissions of Albert Morgan relative to Plaintiffs on or about April 2, 2011.

**RESPONSE:**

Arctic believes that Dr. Albert Morgan did not cause Jaclyn Cabales to have a stroke. These facts will be apparent as discovery and this litigation continues. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 2 of 21

**INTERROGATORY NO. 2:** Please state all facts supporting your claim, if any, that you are not vicariously liable for the acts or omissions of Christopher Twiford relative to Plaintiffs on or about April 2, 2011.

**RESPONSE:**

Arctic believes that Dr. Albert Morgan did not cause Jaclyn Cabales to have a stroke, and that Dr. Christopher Twiford acted appropriately with regards to this matter. These facts will be apparent as discovery and this litigation continues. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 3 of 21

Exhibit_____ E_____
Page___ 3___ of 21

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 53 of 100

**Exhibit DD**
**53 of 100**

**INTERROGATORY NO.3:** Please state all facts, supporting your claim, if any, that you are not vicariously liable for the acts or omissions of Walter Campbell relative to Plaintiffs on or about April 2, 2011.

**RESPONSE:**

Arctic believes that Dr. Albert Morgan did not cause Jaclyn Cabales to have a stroke, and that Dr. Twiford and Dr. Campbell acted appropriately with regards to this matter. These facts will be apparent as discovery and this litigation continues. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 4 of 21

Exhibit____E____
Page__4__of 21

**Exhibit DD**
**54 of 100**

**INTERROGATORY NO. 4**:  Please describe all phone calls (or any other form of communication) you made or received on April 2, 2011, with anyone at Arctic Chiropractic, including but not limited to any employee, member of the staff, patient, patient's family member, or Albert E. Morgan.  In describing these phone calls, please identify the phone number making the call, the phone number called, the precise times of the call, the precise duration of the call, the full content of each communication, whether any notes were made (whether in draft or final form) and by whom, and the person who has custody or control of the phone records relating to each such communication or any notes of each communication.

**RESPONSE:**

Dr. Campbell received a telephone call from Dr. Christopher Twiford informing him of the situation with Jaclyn Cabales.  Dr. Campbell later spoke with both Brooke Arnett and Dr. Albert Morgan and was advised that Ms. Cabales had been taken to the hospital, and had been released with a diagnosis of having the stomach flu.  Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST*
*INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 5 of 21

**Exhibit** ___E___
**Page** __S__ of __21__

**INTERROGATORY NO.5**: Please state all facts you considered when you approved the use of Albert E. Morgan to provide chiropractic care at any Arctic Chiropractic office. In providing your answer, please state who supplied you with any information, what information each source supplied, what agent made the decision for you and when, what you or your agent considered important in making your decision, whether you or your agent had any concerns or reservations, why you approved the use of Albert R. Morgan to provide chiropractic care at that office, and the dates and times your approval occurred.

**RESPONSE:**

Arctic Chiropractic had used Dr. Morgan many times prior to this incident, both as a full-time clinic doctor, and as an independent *locum tenens* doctor. At the time Dr. Campbell hired Dr. Morgan, he was working for the President of the State of Alaska Board of Chiropractic Examiners, and had come highly recommended by several experienced chiropractors in Anchorage. Dr. Campbell had Dr. Morgan work with him for an entire day in the Wasilla clinic, and then interviewed Dr. Morgan on the 5 hour drive to the Healy clinic, where they again worked together for an entire day. During the 2 days Dr. Campbell and Dr. Morgan worked together, Dr. Morgan demonstrated good clinical knowledge, acumen and adjustment procedures. Dr. Campbell received excellent feedback from his patients. Dr. Campbell received only one complaint about Dr. Morgan from a patient who was offended that Dr. Morgan asked her about her menstrual cycle. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 6 of 21

**INTERROGATORY NO.6:**   Please state all facts explaining why Jaclyn Cabales needed to be immediately taken to the ER after she suddenly developed symptoms including vomiting, dizziness, and loss of vision.

**RESPONSE:**

Objection.  Arctic objects to the premise of the question as Ms. Cabales' symptoms were not suddenly on-set.  Without waiving the objection, Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 7 of 21

**INTERROGATORY NO.7:** Please state the possible diagnoses which could explain why a chiropractic patient might suddenly develop the symptoms of vomiting, dizziness, and loss of vision immediately after a chiropractic manipulation of her neck.

**RESPONSE:**

Objection. Arctic objects to the premise of the question as no manipulation was performed on Ms. Cabales. Arctic objects as the request is overly broad. Arctic objects as the request is irrelevant. Without waiving the objection, Dr. Campbell is not a doctor specializing in any medical field other than chiropractic, and therefore cannot comment on other medical fields. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 8 of 21

*Exhibit* E
*Page* 8 *of* 21

**Exhibit DD**
**58 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 58 of 100

**INTERROGATORY NO.8**: Please state all facts explaining why on April 2, 2011 a reasonably prudent chiropractor would have required Arctic Chiropractic's employees, staff, and/or Albert E. Morgan to immediately transport Jaclyn Cabales to the local hospital's emergency room under the circumstances alleged in the Complaint.

**RESPONSE:**

Objection to form, foundation, and mischaracterization. Arctic objects to the use of the word "require" as it is a mischaracterization. Without waiving the objection, Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 9 of 21

**INTERROGATORY NO.9**:  Please state all facts explaining how or why on April2, 2011 a reasonably prudent supervisor of a chiropractic office would have required Arctic Chiropractic's employees, staff, and/or Albert E. Morgan to immediately transport Jaclyn Cabales to the local hospital's emergency room under the circumstances alleged in the Complaint.

**RESPONSE:**

Objection to form, foundation, and mischaracterization.  Arctic objects to the use of the work "required" as it is a mischaracterization.  Without waiving the objection, Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER.  Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 10 of 21

Exhibit___E___
Page__10_ of _21_

**Exhibit DD**
**60 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 60 of 100

**INTERROGATORY NO. 10**:  Please state all facts which you maintain trigger any insurance coverage for you or a duty to defend by an insurer, whether those facts are alleged in the complaint or not.

**RESPONSE:**

      Objection.  Arctic objects as the question is vague and ambiguous.  Without waiving the objection, Dr. Campbell cannot speculate on scenarios of insurance coverage.  Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 11 of 21

Exhibit___E_____
Page__11__of_21_

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 61 of 100

**Exhibit DD**
**61 of 100**

**INTERROGATORY NO. 11**:  Please state all facts indicating whether your employees, staff, agent(s) and/or Albert E. Morgan compiled with Twiford's instructions that Jaclyn Cabales be "immediately" taken to the local hospital's emergency room.  If your answer is that there was compliance with those instructions, please state all facts supporting how there was compliance, including but not limited to what time you believe Ms. Cabales was brought to the ER.  If your answer is that there wasn't compliance, please state all facts supporting how any why there was no compliance with Twiford's instructions.

**RESPONSE:**

Objection.  Arctic objects to form and mischaracterization.  Arctic objects to the use of the word "instructions" as it is a mischaracterization.  Without waiving the objection, Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER or what instructions, if any, staff were given by Dr. Twiford.  Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST*
*INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 12 of 21

**INTERROGATORY NO. 12**: Please state all facts indicating whether your employees, staff, agent(s) and/or Albert E. Morgan compiled with Twiford's instructions that a staff member immediately go with Jaclyn Cabales to the local emergency room and inform the hospital of her condition. If y ur answer is that there was compliance with those instructions, please state all facts supporting how there was compliance, including what person informed the hospital of Jaclyn's condition and what information was conveyed. If your answer is that there wasn't compliance, please state all facts supporting how and why there was no compliance with Twiford's instructions.

**RESPONSE:**

Objection. Arctic objects to form and mischaracterization. Arctic objects to the use of the word "instructions" as it is a mischaracterization. Without waiving the objection, Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER or what instructions, if any, staff were given by Dr. Twiford. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al. Case No. 4BE-13-00082 CI*
Page 13 of 21

**INTERROGATORY NO. 13**:  Other than communicating with those identified in your response to Interrogatory No.4, please describe in detail anything else you did on April2, 2011 in response to being informed of Jaclyn Cabales' sudden on-set of symptoms or Twiford's belief that Jaclyn needed to be immediately transported to the ER.   If you had communication  with anyone else, please comply with the General Instructions in describing that communication.

**RESPONSE:**

No other communications were made.   Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 14 of 21

**INTERROGATORY NO. 14**:  As to each instruction you gave on April 2, 2011 to an Arctic Chiropractic employee, staff member, agent, and/or Albert E. Morgan, after you first learned of Jaclyn Cabales' symptoms, please fully explain all of your instructions, the precise time(s) these instructions were given, and your reasons for giving each such instruction.

**RESPONSE:**

Objection.  Arctic objects to form and mischaracterization.  Arctic objects to the use of the word "instruction" as it is a mischaracterization.  Without waiving the objection, when speaking with Brooke Arnett and Dr. Twiford, Dr. Campbell requested that they document everything that had happened.  Dr. Campbell does not recall the exact times.  Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 15 of 21

**INTERROGATORY NO.15:** If you believe or maintain that YKHC was negligent and a cause of Jaclyn Cabales' injuries, please state all facts that in any way support your answer.

**RESPONSE:**

It is Arctic's belief that Dr. Albert Morgan did not cause Jaclyn Cabales to have a stroke. Any negligence may have occurred at YKHC as a result of their mis-diagnosis of Jaclyn Cabales. Defendant reserves the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 16 of 21

**INTERROGATORY NO. 16**:  After you had notice that Jaclyn Cabales required emergency medical treatment following her April 2, 2011 appointment with Morgan, please describe in detail, what additional chiropractic care you allowed or authorized Morgan to do or not to do relative to Arctic Chiropractic's patients from April2, 2011 to the present.

**RESPONSE:**

No changes were made.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 17 of 21

**INTERROGATORY NO. 17**:  If it is your position that Morgan properly used a handkerchief or other cloth to place Jaclyn's neck in extension and traction, please state all reasons why this was a safe chiropractic procedure and a technique employed by a chiropractor exercising the knowledge, skill, or degree of care ordinarily exercised under the circumstances  by health practitioners in the field or specialty in which Morgan practiced.

**RESPONSE:**

It is Arctic's belief that Jaclyn Cabales was not placed in traction the date of the alleged incident.  Dr. Campbell has viewed Dr. Morgan placing patients in extension or traction, and has never viewed anything improper.  Defendants reserve the right to supplement this response as discovery continues.

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S  ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 18 of 21

Exhibit___E____
Page__18__of_21_

**Exhibit DD**
**68 of 100**

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 68 of 100

**INTERROGATORY NO. 18**: Please explain why it was reasonable for Morgan or Arctic Chiropractic staff to fail to immediately call an ambulance to take Jaclyn to the YKHC ER after she vomited and began to loose her vision on April 2, 2011.

**RESPONSE:**

Dr. Campbell was not present at the Bethel clinic of Arctic Chiropractic on the date of the incident, and therefore has no personal, first-hand knowledge of the circumstances surrounding the need for Jaclyn Cabales to be transported to the ER or what instructions, if any, staff were given by Dr. Twiford. Defendant reserves the right to supplement this response as discovery continues.

BOYLE LITIGATION

**Dennis E. Boyle, Esquire**
Alaska Bar No. 1010055
4660 Trindle Road, Suite 200
Camp Hill, PA 17011
Phone: (717) 737-2430
Fax: (717) 737-2452
Email: deboyle@boylelitigation.com

Counsel For: Arctic Chiropractic Bethel, LLC

Dated: December 24, 2013

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al. Case No. 4BE-13-00082 CI*
Page 19 of 21

I, Walter P. Campbell, D.C., hereby verify that the answers set forth in the Defendant, Arctic Chiropractic Bethel, LLC's Answers to Plaintiffs First Set of Interrogatories, are true and correct to the best of my knowledge, information and belief.


Dated: _____                    _____
                                           Walter P. Campbell. D.C.

## **ACKNOWLEDGMENT**

**STATE OF ALASKA**                    :
                                       : **ss.**
**_____ JUDICIAL DISTRICT**      :


This is to certify that on the _____ day of _____, 2013, personally appeared before me WALTER P. CAMPBELL, known to me to be the indivdual described in and who executed the foregoing Defendant, Arctic Chiropractic Bethel, LLC's Answers to Plaintiffs First Set of Interrogatories, that this document was signed as a free and voluntary act and deed, for the uses and purposes therein described.

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, in and for the State of Alaska, the date and year written above.


                                           _____
                                           Notary Public In and For Alaska
                                           My Commission Expires:

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 20 of 21

## CERTIFICATE OF SERVICE

I hereby certify that on the date written below, a true and correct copy of the foregoing

Defendant, Arctic Chiropractic Bethel, LLC's, Answers to Plaintiffs First Interrogatories was served

by United States First Class Mail, postage pre-paid, upon those person(s) listed below:

Myron E. Angstman, Esquire
Angstman Law Office
P. O. Box 585
Bethel, AK 99559

Michael J. Hanson, Esquire
Call, Hanson & Kell, P.C.
413 G Street
Anchorage, AK 99501-2126

Penny A. Rogers, Pa.C.P.
Senior Paralegal

Dated: December 27, 2013

*DEFENDANT ARCTIC CHIROPRACTIC BETHEL, LLC'S ANSWERS TO PLAINTIFFS FIRST*
*INTERROGATORIES*
*Cabales v. Morgan et al.* Case No. 4BE-13-00082 CI
Page 21 of 21

Received

MAY 3 0 2013

Angstman Law Office

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JACLYN CABALES and JONATHAN
CABALES,

          Plaintiffs,

v.

ALBERT E. MORGAN, D.C., ARCTIC
CHIROPRACTIC BETHEL, LLC, and
CHRISTOPHER F. TWIFORD, D.C.,

          Defendants.

Case No.: 4BE-13-00082 CIV

## DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES

COMES NOW Defendant Christopher F. Twiford, D.C. by and through

counsel of record, Call, Hanson & Kell, P.C., and hereby submits

defendant's responses to Plaintiff Jaclyn Cabales First Interrogatories to

Defendant Christopher Twiford as follows:

**INTERROGATORY NO. 1**: Please state all facts which in any way

support the statement in your Answer that Defendant Morgan E. Morgan,

D.C. was "an independent contractor during the relevant period." If your

answer refers to any document that supports your answer, please comply

with the General Instructions explained above so the document(s) may be

properly identified.

**ANSWER**: I did not participate in the payroll or employee/contractor
classification for Arctic Chiropractic in April 2011. Dr. Walter Campbell, the
owner of Arctic Chiropractic suggested Dr. Morgan to me and that Dr.
Morgan had worked at many of his other offices, and told me that he would
pay Dr. Morgan as an independent contractor.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN
CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 1 of 8

*Exhibit* F
*Page* 1 *of* 8

Exhibit DD
72 of 100

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

CALL, HANSON & KELL, P.C.

413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**INTERROGATORY NO. 2**: Please describe all phone calls (or any other form of communication) you made or received on April 2, 2011 with anyone at Arctic Chiropractic, including but not limited to any employee, member of the staff, patient, patient's family member, or Albert E. Morgan. In describing these phone calls, please identify the phone number making the call, the phone number called, the precise times of the call, the precise duration of the call, the full content of each communication, whether any notes were made (whether in draft or final form) and by whom, and the person who has custody or control of the phone records relating to each communication.

**ANSWER**: On April 2, 2011 I was out of town in Gallatin, Tennessee. I received a phone call from Brooke Arnett, the front desk at Arctic Chiropractic Bethel sometime in the afternoon. I do not remember the specific time, but I believe it was somewhere in the vicinity of 1:00 p.m. Alaska time/4:00 p.m. Tennessee time. Brooke said that Jaclyn Cabales had called that morning and had urgently asked to be seen that day for a severe headache. Brooke said that Jaclyn came in the office and was now vomiting and dizzy and had vision problems. I did not know what exactly was wrong, as I was 4,000 miles away in Tennessee, and could not examine the patient, but I knew that it did not sound good and certainly seemed like something that would be better evaluated and treated at a hospital, so I advised Brooke that Jaclyn should go the YKHC hospital right away. Brooke agreed and stated that they had already called Jaclyn's husband Jonathan Cabales and he was on his way to the office to get her. I suggested that Brooke should accompany the Cabales' to the hospital and advise the YKHC staff on everything that had happened as Jaclyn might not be able to speak for herself or present the full history of her headache. Brooke said she would do that. I asked her to call me back from the hospital when she knew more. Brooke said she would. The phone call probably took 3 minutes total.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 2 of 8

Exhibit ___F___
Page __2__ of __8__   Exhibit DD

CALL, HANSON & KELL, P.C.

413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

I immediately called Dr. Walter Campbell and advised him of what I had been told. He was very concerned, wished Jacqueline well, and told me to keep him posted on developments. I said I would.

I received a call from Brooke Arnett about an hour later saying that she had stayed with the Cabales' until Jaclyn was taken back to be examined. Brooke said she spoke with the initial YKHC triage nurse when Jaclyn was being taken back and had also talked quite a bit with Jaclyn's husband Jonathan on the drive in and at the hospital and he was aware of all the facts. Brooke said Jaclyn was being taken back by YKHC staff to be examined so she left and went home. I asked Brooke to try to stay in touch with Jonathan at their numbers over the weekend. She said she would. I told Brooke she would need to sit down and write out everything she remembered happening that day in full detail. The call probably lasted 5 minutes.

I called Dr. Walter Campbell in Alaska and advised him of the updates. As before he wished Jacqueline and her husband well and asked me to keep him up to date.

I do not remember the specific time but on the next day Sunday, April 3, 2011, maybe around noon Alaska Time I received a call from Brooke. She said that after several calls and messages left she had finally gotten in touch with Jonathan Cabales. She said that Jonathan told her that YKHC had examined Jaclyn and diagnosed her with stomach flu and had released her home that night.

I called Dr. Campbell and gave him the update.

I called Dr. Morgan and asked him about the incident. I suggested he also write down everything he remembered about that day.


**INTERROGATORY NO. 3**: Please state all facts you considered when

you approved the use of Albert E. Morgan to provide chiropractic care at

Arctic Chiropractic. In providing your answer, please state who supplied

you with any information, what information each source supplied, what you

considered important in making your decision, whether you had any

concerns or reservations, why you approved the use of Albert R. Morgan to

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 3 of 8

Exhibit ___F___
Page _3__ of _8_ Exhibit DD

provide chiropractic care at that office, and the dates and times your approval occurred.

**ANSWER**: I was going to be taking some time off at the end of March/beginning of April 2011. Dr. Walter Campbell, the owner of Arctic Chiropractic suggested that we consider bringing in a vacation relief doctor rather than just closing the clinic during my absence. As I knew of nobody, I asked Dr. Campbell if he had anyone in mind. He suggested Dr. Albert Morgan. I inquired a lot of Dr. Campbell about Dr. Morgan. Dr. Campbell told me:

-Dr. Morgan had nearly 40 years of practicing experience;

-Dr. Morgan's father had been a Chiropractor as well so Al was a second generation Chiropractor and between the two of them there were over 85 years of practice experience in that family;

-Before coming to work with Arctic Chiropractic, Dr. Morgan's previous employment had been with a Chiropractor who was president of the Alaska Board of Chiropractic Examiners; and

-Dr. Morgan had worked with at least 6 or 7 of the other Arctic Chiropractic offices for over a year and had nothing but glowing recommendations from all the patients at each of those offices

I spoke with Dr. Morgan on the phone and interviewed him three times before agreeing to bring him out to the Bethel Arctic Chiropractic Office.

Additionally, I spoke with Dr. Rob Lewis in the Fairbanks office and Dr. Jamie Dothage in the Delta Junction office, both of whom had Dr. Morgan work in their offices recently. Both doctors gave me a very good recommendation on Dr. Morgan.

**INTERROGATORY NO. 4**: Please state all facts explaining why you believed that Jaclyn Cabales needed to be immediately taken to the ER when you learned she was vomiting, dizzy and had a loss of vision.

**ANSWER**: See response to interrogatory # 2.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 4 of 8

Exhibit ___F___
Page _4_ of _8_ Exhibit DD

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**INTERROGATORY NO. 5**:  Please state all facts explaining how or why on April 2, 2011 you could require Arctic Chiropractic's employees, staff, and/or Albert E. Morgan to immediately transport Jaclyn Cabales to the local hospital's emergency room.

**ANSWER**:  Objection form, foundation, mischaracterization as to the use of the word "require," without waiving the objection, see response interrogatory # 2.

**INTERROGATORY NO. 6**:  Please state all facts which you maintain trigger any insurance coverage for you or a duty to defend by an insurer, whether those facts are alleged in the complaint or not.

**ANSWER**:  Objection, calls for a legal analysis and conclusion.

**INTERROGATORY NO. 7**:  Please state all facts indicating whether Arctic Chiropractic's employees, staff, agent(s) and/or Albert E. Morgan complied with your instructions that Jaclyn Cabales be "immediately" taken to the local hospital's emergency room.  If your answer is that there was compliance with those instructions, please state all facts supporting how there was compliance, including but not limited to what time you believe Ms. Cabales was brought to the ER.  If your answer is that there wasn't compliance, please state all facts supporting how any why there was no compliance with your instructions.

**ANSWER**: Objection to the use of the word instruction as it is a mischaracterization. Without waiving the objection, I advised Brooke that Jaclyn should go to the hospital immediately and that someone should stay with her to explain events in case Jaclyn could not.  It is my understanding that my advice was followed.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 5 of 8

*Exhibit* F
*Page* 5 of Exhibit DD

**CALL, HANSON & KELL, P.C.**
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**INTERROGATORY NO. 8**: Please state all facts indicating whether Arctic Chiropractic's employees, staff, agent(s) and/or Albert E. Morgan complied with your instructions that a staff member immediately go with Jaclyn Cabalas to the local emergency room and inform the hospital of her condition. If your answer is that there was compliance with those instructions, please state all facts supporting how there was compliance, including what person informed the hospital of Jaclyn's condition and what information was conveyed. If your answer is that there wasn't compliance, please state all facts supporting how and why there was no compliance with your instructions.

**ANSWER**: Objection to the use of the word instruction as it is a mischaracterization. Without waiving the objection, I was not present, but it is my understanding that Brooke Arnett did accompany Mr. and Mrs. Cabales to the YKHC emergency room and had discussed the events with Mr. Cabales and the triage nurse.

**INTERROGATORY NO. 9**: Other than communicating with those identified in your response to Interrogatory No. 2, please describe in detail anything else you did on April 2, 2011 in response to you concluding Jaclyn Cabales needed to be transported from Arctic Chiropractic because she was vomiting, dizzy, and had lost her vision. If you had communication with anyone else, please comply with the General Instructions in describing.

**ANSWER**: All communications from April 02 are documented in interrogatory #2.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 6 of 8

Exhibit  F
Page  6  of 8  Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 77 of 100      77 of 100

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**CALL, HANSON & KELL, P.C.**

413 G Street

Anchorage, Alaska 99501-2126

Phone (907) 258-8864 • Fax (907) 258-8865

**INTERROGATORY NO. 10**: As to each instruction you gave on April 2, 2011 to an Arctic Chiropractic employee, staff member, agent, and/or Albert E. Morgan, after you first learned of Jaclyn Cabales' symptoms, please fully explain your reasons for giving each such instruction.

**ANSWER**: Objection to the use of the word instruction as it is a mischaracterization. I advised Ms. Arnett of what I believed were the appropriate actions based on what she had told me. Without waiving the objection, please see my response to interrogatory # 2.

DATED at Anchorage, Alaska, this 29ᵗʰ day of May, 2013.

CALL, HANSON & KELL, P.C.
Attorneys for Defendant Christopher F. Twiford, D.C.

By: _____
Michael J. Hanson
ABA No.: 8611115

DATED at Bethel, Alaska, this _____ day of _____, 2013.

_____
CHRISTOPHER F. TWIFORD

**ACKNOWLEDGMENT**

STATE OF ALASKA           )
                          ) ss.
FOURTH JUDICIAL DISTRICT )

This is to certify that on the 28th day of May, 2013, personally appeared before me CHRISTOPHER F. TWIFORD, known to me to be the individual described in and who executed the foregoing interrogatories and acknowledged that this document was signed as a free and voluntary act and deed, for the uses and purposes therein described.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 7 of 8

Exhibit  F
Page  7  of 8

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public in and for the State of Alaska, the date and year hereinabove written.

_____
Notary Public In and For Alaska
My Commission Expires: 7|10|2013

**CERTIFICATE OF SERVICE**
I hereby certify that a true and correct copy of the foregoing was ☐ faxed ☐ hand delivered and/or ☒ mailed this 24th day of May, 2013 to:

Myron Angstman
Angstman Law Office
P.O. Box 585
Bethel, AK 99559



<div style="writing-mode: vertical">

**CALL, HANSON & KELL, P.C.**
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

</div>

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST INTERROGATORIES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 8 of 8

Exhibit ___F___
Page ___8___ of 8 Exhibit DD

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

JACLYN CABALES and JONATHAN
CABALES,

             Plaintiffs,

v.

ALBERT E. MORGAN, D.C., ARCTIC
CHIROPRACTIC BETHEL, LLC, and
CHRISTOPHER F. TWIFORD, D.C.,

             Defendants.

Case No.: 4BE-13-00082 CIV

## DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION

COMES NOW Defendant Christopher F. Twiford, D.C. by and through counsel of record, Call, Hanson & Kell, P.C., and hereby submits defendant's responses to Plaintiff Jaclyn Cabales First Request for Admission.

**REQUEST FOR ADMISSION NO. 1:** Please admit that the Arctic Chiropractic medical record dated April 2, 2011 contains handwritten notations by Dr. Morgan indicating that he began "manual therapy . . . 15 min." on Jaclyn Cabales when she visited the office that day.

**ANSWER**: Admit.

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN
CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 1 of 13

Exhibit____G

Page____1____of 13

CALL, HANSON & KELL, P.C.

413 G Street

Anchorage, Alaska 99501-2126

Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 2**:  Please admit it is your practice to circle treatment description(s) on the Arctic Chiropractic record after you have completed the physical exam and conducted the treatment.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 3**:  Please admit that it is unlikely Dr. Morgan would have circled the treatment "manual therapy . . . 15 min." before his physical examination or treatment of Jaclyn began on April 2, 2011.

**ANSWER**:  Objection, requires the defendant to speculate on Dr. Morgan's thought process, without waiving the objection, defendant admits it is his practice only to circle treatment modalities after they have been performed.

**REQUEST FOR ADMISSION NO. 4**:  Please admit that Dr. Morgan's Arctic Chiropractic's records dated April 2, 2011 show that Morgan believed that Jaclyn suffered a "NSAID reaction" and needed to go to the hospital.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 5**:  Please admit that you never personally spoke with Dr. Albert Morgan on April 2, 2011.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 6**:  Please admit that the first time you spoke to Dr. Morgan about Jaclyn was on April 3, 2011.

**ANSWER**:  Admit that the first time I spoke to Dr. Morgan regarding the events concerning Jaclyn Cabales on April 2, 1011, was on April 3, 2011.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 2 of 13

Exhibit___G___
Page___2___of 13 Exhibit DD

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 7**:  Please admit that Dr. Morgan told you on April 3, 2011 that he had already begun his manual therapy on Jaclyn on April 2, 2011 before Jaclyn began vomiting and complained of a loss of her vision.

**ANSWER**:  Admit, to the best of my memory Dr. Morgan informed me he had started his examination of Jaclyn at the time she began vomiting.

**REQUEST FOR ADMISSION NO. 8**:  Please admit that it is not your practice to use a handkerchief or other cloth to place a patient's neck into extension or traction.

**ANSWER**:  Admit.

**REQUEST FOR ADMISSION NO. 9**:  Please admit that the manipulation described in request for admission no. 8 is dangerous because it can place too much pressure against the arteries of the patient's neck.

**ANSWER**:  Denied.

**REQUEST FOR ADMISSION NO. 10**:  Please admit that the manipulation with a handkerchief described in request for admission no. 8 is not a standard or accepted chiropractic procedure taught by accredited chiropractic schools.

**ANSWER**:  Objection, requires the defendant to speculate on the current procedure at chiropractic schools throughout the nation; however, defendant does recall the manipulation involving the use of a towel being taught at accredited chiropractic schools.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 3 of 13

*Exhibit   G*
*Page  3  of 13*   Exhibit DD

**CALL, HANSON & KELL, P.C.**
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 11**: Please admit that the manipulation with a handkerchief described in request for admission no. 8 did not involve the degree of knowledge or skill ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**ANSWER**: Objection, compound question; however, without waiving the objection, Defendant denies the request since the manipulation techniques used by Dr. Morgan are used by licensed chiropractors in the ordinary course of the profession.

**REQUEST FOR ADMISSION NO. 12**: Please admit that the manipulation with a handkerchief described in request for admission no. 8 did not involve the degree of care ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**ANSWER**: Denied. See response to Request for Admission #11.

**REQUEST FOR ADMISSION NO. 13**: Please admit that Morgan's use of a handkerchief to manipulate Jaclyn's neck on or about April 2, 2011 damaged the artery in her neck.

**ANSWER**: Objection, requires speculation as to whether Dr. Morgan manipulated the plaintiff's neck on April 2, 2011, whether a manipulation would have caused injury to plaintiff's artery and/or whether any manipulation, if any, did cause injury.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 4 of 13

Exhibit ___G___
Page ___4___ of 13 Exhibit DD

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 14**:  Please admit that you would not have utilized a handkerchief or other cloth to manipulate Jaclyn's neck if you had provided her with chiropractic care.

**ANSWER**:  Admit.

**REQUEST FOR ADMISSION NO. 15**:  Please admit under your arrangement with Arctic Chiropractic and/or Dr. Walter Campbell, you had a "say" whether Arctic Chiropractic utilized Dr. Albert Morgan as your "vacation relief doctor."

**ANSWER**:  Admit.

**REQUEST FOR ADMISSION NO. 16**:  Please admit that your agreement was required before Dr. Albert Morgan could act as the "vacation relief doctor" during your absence from Arctic Chiropractic (Bethel) in the beginning of March/end of April, 2011.

**ANSWER**:  Admit.

**REQUEST FOR ADMISSION NO. 17**:  Please admit that you had a reservation(s) about using Dr. Morgan as your "vacation relief doctor" and this explains, at least in part, why you interviewed him 3 times before agreeing to his use.

**ANSWER**:  Objection to the use of the "reservation" as vague; however, without waiving the objection I deny I had "reservation" specifically about Dr. Morgan acting as my fill in.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 5 of 13

*Exhibit*____G____
*Page*____5____ of ____  Exhibit DD

**CALL, HANSON & KELL, P.C.**
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 18**: Please admit that you were aware that Dr. Morgan used a handkerchief or other cloth to manipulate a patient's neck as part of his treatment techniques.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 19**: Please admit that you approved the use of Dr. Morgan using a handkerchief or other cloth to manipulate a patient's neck as part of his treatment techniques.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 20**: Please admit that you would have allowed Dr. Morgan to use a handkerchief or other cloth to place your neck into extension or traction if Dr. Morgan had acted as your chiropractor.

**ANSWER**: Admit.

**REQUEST FOR ADMISSION NO. 21**: Please admit that Jaclyn and/or her insurer was charged more for the same service because she had insurance than if Jaclyn had simply paid for her care from her own pocket.

**ANSWER**: Objection, the request is vague and confusing; however, the request is denied as to charging "more for the same service."

**REQUEST FOR ADMISSION NO. 22**: Please admit that Jaclyn and/or her insurer was charged approximately 3-times for the same service

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 6 of 13

*Exhibit___G____*
*Page___6___of_13_* Exhibit DD

because Jaclyn had insurance than if she had simply paid for her care from her own pocket.

**ANSWER**: Objection, vague and confusing; however, without waiving the objection the request is denied.

**REQUEST FOR ADMISSION NO. 23**: Please admit that you were aware of complaints about Dr. Morgan's patient care prior to April 2, 2011.

**ANSWER**: Denied.

**REQUEST FOR ADMISSION NO. 24**: Please admit that you were aware of complaints about Dr. Morgan's competence prior to April 2, 2011.

**ANSWER**: Denied.

**REQUEST FOR ADMISSION NO. 25**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan was inadequately trained as a chiropractor.

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 26**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan exhibited skills below the standard of care.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 7 of 13

CALL, HANSON & KELL, P.C.

413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 27**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan was inadequately trained as a chiropractor and exhibited knowledge or skill below the standard of care ordinarily exercised under the circumstances by health practitioners in the field or specialty in which Morgan practiced.

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 28**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of Jaclyn's symptoms, including her vomiting and loss of vision.

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 29**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of Jaclyn's subsequent stroke.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 8 of 13

Exhibit____G____
Page___8___ of 13  Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 87 of 100   **87 of 100**

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 30**: Please admit that if Jaclyn's allegations are correct and Morgan manipulated her neck with a handkerchief or cloth, damaging her artery, Morgan's acts were a cause of bodily injury to Jaclyn requiring immediate medical attention.

**ANSWER**: Objection, calls for speculation and is compound; however, without waiving the objection the request is denied. This request requires expert testimony.

**REQUEST FOR ADMISSION NO. 31**: Please admit that you had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to immediately call an ambulance to pick up Jaclyn Cabales at the office and transport her to the YKHC ER.

**ANSWER**: Objection, vague on the meaning and use of the word "authority"; however, without waving the objection Dr. Twiford could have told an employee of Arctic Chiropractic to call an ambulance. Dr. Twiford denies any implication that he was the person in charge of Jaclyn's care on April 2, 2011.

**REQUEST FOR ADMISSION NO. 32**: Please admit that Morgan was required to follow your instructions during the time he acted as a vacation relief doctor at Arctic Chiropractic in Bethel.

**ANSWER**: Denied, Dr. Morgan was hired to use his own independent professional judgment with patients in my absence from Arctic Chiropractic.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 9 of 13

*Exhibit* G
*Page* 9 *of* 13  **Exhibit DD**

**REQUEST FOR ADMISSION NO. 33**:  Please admit that you had the authority to instruct Morgan to communicate directly with the YKHC ER on April 2, 2011 to explain how Jaclyn had been treated at Arctic Chiropractic and to detail her sudden on-set of symptoms.

**ANSWER**:  Objection, vague on the meaning of the word authority.  I was not present at the time of the events and had instructed Dr. Morgan to use his individual professional judgment in the treatment of the patients prior to leaving the state.  Dr. Twiford admits he could have told Dr. Morgan that YKHC be notified of Jaclyn's condition, but whether he had "authority to instruct" is vague and may require a legal conclusion.

**REQUEST FOR ADMISSION NO. 34**:  Please admit that you had the authority to instruct Morgan, Arnett, or any employee of Arctic Chiropractic (Bethel) to deliver a copy of Jaclyn's treatment records to the YKHC ER on April 2, 2011 so the ER could be fully informed of how Jaclyn had been treated at Arctic Chiropractic and her sudden on-set of symptoms.

**ANSWER**:  Denied. Plaintiff would have had to give authority prior to the release of her medical records and she is the only person who could have given Dr. Morgan authority to release her records at that time.

**REQUEST FOR ADMISSION NO. 35**:  Please admit that you believe Walter Campbell was negligent in recommending the use of Dr. Albert Morgan.

**ANSWER**:  Objection, the term "negligent" requires a legal conclusion; however, without waiving the objection the request is denied.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 10 of 13

Exhibit___G
Page __10__ of 13   Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 89 of 100   89 of 100

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 36**: Please admit because of what little Morgan knew of Jaclyn's medical condition, Morgan should not have manipulated Jaclyn's neck using extension or traction.

**ANSWER**: Objection, requires speculation, vague and misleading.

**REQUEST FOR ADMISSION NO. 37**: Please admit that Brooke Arnett was negligent in failing to follow your instructions that Jaclyn be immediately transported to the YKHC ER.

**ANSWER**: Objection, requires speculation since I was not present to see what transpired. Objection to the use of the word "negligent" as it requires a legal conclusion. However, without waiving the objections Dr. Twiford believes Brooke Arnett did follow his suggestion that Jaclyn be transported to YKHC ER.

**REQUEST FOR ADMISSION NO. 38**: Please admit that Brooke Arnett, or other employees of Arctic Chiropractic, or another patient had voiced concerns about Morgan's care or competence prior to April 2, 2011.

**ANSWER**: Denied.

**REQUEST FOR ADMISSION NO. 39**: Please admit that following her on-set of symptoms while lying on the treatment table, Morgan had Jaclyn moved from the treatment room to a different room so Morgan could continue to treat other patients.

**ANSWER**: Objection, calls for speculation since Dr. Twiford was not present he does not have any personal knowledge.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 11 of 13

Exhibit ___G___
Page __11__ of __13__ Exhibit DD

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 90 of 100       90 of 100

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

CALL, HANSON & KELL, P.C.

413 G Street

Anchorage, Alaska 99501-2126

Phone (907) 258-8864 • Fax (907) 258-8865

**REQUEST FOR ADMISSION NO. 40**:  Please admit that after seeing Jaclyn on April 2, 2012, Morgan took a break from treating patients on April 2, 2011 to search the Internet for information related to drug side effects and adverse reactions.

**ANSWER**:  Objection, calls for speculation since Dr. Twiford was not present he does not have any personal knowledge.

**REQUEST FOR ADMISSION NO. 41**:  Please admit that Morgan took the time to do his April 2, 2011 Internet search described in request for admission no. 39, but he did not take the time to communicate with the YKHC ER about the treatment Jaclyn received at Arctic Chiropractic or her sudden on-set of symptoms including vomiting and loss of her vision.

**ANSWER**:  Objection, calls for speculation since Dr. Twiford was not present he does not have any personal knowledge.  Additionally, Request for Admission 41 is compound.

**REQUEST FOR ADMISSION NO. 42**:  Please admit that Jaclyn's stroke which is the subject of the complaint was not the result of a NSAID reaction.

**ANSWER**:  Objection, Request for Admission 42 requires an expert medical opinion beyond the scope of Dr. Twiford's expertise.

**REQUEST FOR ADMISSION NO. 43**:  Please admit that you believe Morgan was at fault for Jaclyn's injuries because of his acts or omissions on April 2, 2012.

**ANSWER**:  Objection, vague and calls for a legal conclusion; however without waiving the objection the request is denied.

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 12 of 13

*Exhibit*  G
*Page*  12  *of*  1   Exhibit DD

**REQUEST FOR ADMISSION NO. 44**:  Please admit that you believe Arctic Chiropractic was at fault for Jaclyn's injuries which are the subject of her complaint.

**ANSWER**:  Objection, vague and calls for a legal conclusion; however without waiving the objection the request is denied.

DATED at Anchorage, Alaska, this 31st day of December, 2013.

CALL, HANSON & KELL, P.C.
Attorneys for Defendant Christopher
F. Twiford, D.C.

By: _____
Michael J. Hanson
ABA No.: 8611115

**CERTIFICATE OF SERVICE**
I hereby certify that a true and correct copy of the foregoing was ☐ faxed ☐ hand delivered and/or ☒ mailed this 31st day of December, 2013 to:

Myron Angstman
Angstman Law Office
P.O. Box 585
Bethel, AK 99559

Robert J. Campbell
Caliber Law Group
P.O. Box 1303
Barrow, AK 99723

Dennis E. Boyle
Boyle Litigation
4660 Trindle Road, Suite 102
Camp Hill, PA 17011

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S RESPONSES TO PLAINTIFF JACLYN CABALES FIRST REQUEST FOR ADMISSION
*Cabales v. Morgan, Arctic Chiro, and Twiford*, 4BE-13-00082 CIV
Page 13 of 13

Exhibit  G
Page 13 of 13  Exhibit DD

# YUKON-KUSKOKWIM HEALTH CORPORATION

**Emergency Dept. — Adult**
24hr History & Physical

**CC/HPI:** (Time: 18:10 ) 30yo♀ presented c̄ husband concerned that second day of illness. ⊕ lots of vomiting + gagging, diarrhea, hard to keep anything down

**Pain:**
**FLACC:** for non verbal patients.
[pain scale faces: 0 no pain, 2 little pain, 4 moderate, 6 much, 8 severe, 10 very severe]

**Physical Exam** (Check or circle positives. Areas left blank are not applicable.)

**VS:** Temp 97.4 BP 140/107 HR 115
RR 24 SpO2 94 % on RA Wt 54.9 kg

**Gen:** Thin Nourished Marg Hydrated AN (race) M / F
NAD abo pale + looks dry
Alert / Responds to voice / Responds to pain / Unresponsive.

**Vision:** ___ R ___/___ L ___/___ B

**Heent:** ✓ NC / AT
X EOMI
X PERRL
X nl conjunctiva — pasty membranes
nl TM's
X nl oropharynx
Tonsils – red / enlarged / patches – R / L
TM – red / bulging / non-mobile – R / L

**Neck:** ___ nl carotids
X Supple neck
No C-spine tenderness
No LAD

**Chest:** ___ No chest tenderness
No resp distress — good air movt
X Clear lungs
Wheezing — wheeze ax basilar
Crackles

**Card:** ___ RRR
No murmur
No gallop — tachy
Irregular rhythm
Murmur ___ / 6 systolic / diastolic
Gallop – S3 / S4

**Abd:** X Soft / flat
X nl BS
X No abd tenderness — ⊘ peritoneal signs
No guarding
No HSM / abd mass
Rigid / guarding
Abd tenderness
Peritoneal signs (___ rebound / ___ heel strike tenderness)

**Pelvic:** ___ nl labia
nl cervix
No CMT
No Discharge
nl adnexa / uterus

**GU:** ___ No hernia
nl testicles

**Rectal:** ___ nl tone
Brown stool
No mass
nl prostate

**Back:** ___ CVA nontender
No spinal tenderness
No radicular pain w/ straight leg test

**Ext:** X No edema
No Joint or Ext deformity

**Skin:** X No rash
X Cap refill= 2 secs

**Neuro:** Oriented X ___ person ___ place ___ time.
**GCS:** E ___ V ___ M ___ Total ___
No sensory deficit
nl tone / strength
nl gait / finger to nose
nl reflexes ___ / 4+
nl cranial nerves 2 -12

**PMH** (circle or check positives or write in): ___ none
___ CAD ___ CHF ___ AFIB ___ HTN
___ CVA/TIA ___ Seizure ___ TB ___ Asthma/COPD
___ Depression ___ GERD ___ PUD ___ IDDM / NIDDM
Borderline BP ppd 1998 neg
Allergic Rhinitis pap 4/3/08 WNL
                                3/17/10

**Immunizations:** Up to date Tdap 12/07
**Surgeries:** ___ Appy ___ Choly ___ BTL ___ TAH / BSO
∅

**Allergies:** NKDA

**Meds:**
NONE

**SH:**
**Tobacco:** ∅      **ETOH:** ∅
**Drug abuse:** ∅
**Domestic violence:**      **Sexual abuse:**
**Fam Hx:**

**ROS** (Circle or check positives, cross out negatives. Areas left blank are not applicable:)
**LMP** (normal / abnormal): 4-7-2011

| CONST | RESP – OOB | GU –Dysuria | NEURO –HA |
|---|---|---|---|
| Fever | Cough | Frequency | Dizziness |
| Fatigue | Hemoptysis | Hematuria | Vertigo |
| Wt. Loss | DOE | Vag bleeding | Weakness |
| EYES –Pain | Wheezing | Discharge | ENDOCRINE |
| Discharge | PND / Orthopnea | MS Back pain | Heat/cold intol |
| Vision change | GI –Abd pain | Joint pain | Polydipsia |
| ENT –Ear pain | Nausea Vomiting | Myalgias | HEME/LYMPH |
| Sore throat | Diarrhea | PSYCH | Bruising |
| Bloody nose | Constipation | Suicidal | Bleeding |
| Rhinorrhea | Melena | Depression | SKIN |
| CV Chest pain | Hematochezia | Homicidal | Rash |
| Palpitations | Heartburn | Anxious | ALL Hives |
| LE edema | Hematemesis | Hallucination | Pruritis |

**PATIENT INFORMATION**

CABALES, JACLYN        4755
4/02/11 MOOSE          049951
01016752147
BETHEL        E EMR

*Alma Perry PAC*
**Provider Signature**
A. Perry PAC
**Provider Printed Name**        date

# YUKON-KUSKOKWIM HEALTH CORPORATION

**Emergency Dept. – Adult History & Physical**

**ORDERS:**

___CXR: PA&Lat / port:_____

___Other Xray:_____

___EKG #1:_____

___EKG #2:_____

___Troponin:  #1 T_____  CK_____
          #2 T_____  CK_____
          #3 T_____  CK_____

___CRP

✓CBC:

___Chem 8:

✓Comprehensive:   12.7 / 12.6 / 256 / 40.2

___Lipase:

___Amylase:

___LFT:        142 | 109 | 9 / 144

___PT/PTT:     3.5 | 236 | 08

✓HCG (Qual / Quant): negative   cacl+8.7

___Blood C&S: X1 / X2          t. prot 7.28

___Sputum: GM stain / C&S      alb 4.4

___RST: + / -   t. bili        alkphos 92

___ETOH / ASA / Tylenol:       sgot 19  sgpt 29

___GC / CT (swab / dirty urine)

✓UA (cath / cc): Spc. grav 1.015  micro  rbc 710≥30

___Lactate:     +3 blood              wbc 8

___BNP          rest neg             +3 amorph sed

___Other:

**MEDICATIONS:** Non-Emergent FDR indicated by initials

| Time | | | |
|---|---|---|---|
| ____ | O2 ___ L/min (NC / NRB / _____  repeat ×π ___) | | |
| X | IV NS @ 1000 ml bolus _____ ml/hr | | |
| ____ | Banana Bag  NS / LR (with 1mg folate, 100 mg thiamine, 1 amp multivitamin, 2 g magnesium sulfate) @ _____ ml/hr | | |
| ____ | Neb 1 – Albuterol / Atrovent Exam: Improved / Not Imp. | | |
| ____ | Neb 2 – Albuterol / Atrovent Exam: Improved / Not Imp. | | |

| Time | Medication | Init. | Init |
|---|---|---|---|
| 18:20 | Zofran 4mg IV | PG | |
| 18:20 | Toradol 30mg IV | PG | |
| 1857 | Zofran 4mg IV | MD | |
| | NS 1000 mL Bolus #3 | | |
| 21:30 | Reglan 10mg IV | | |

**PATIENT INFORMATION**

CABALES, JACLYN          4755
4/02/11  MOOSE           049951
01016752147
BETHEL          E  EMR

---

☐ **Time out immediately before start of procedure by MD, RN to verify correct patient, correct procedure, correct side, correct position**

Time:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Medications Dispensed in ER**

Phenergan 25mg #20

1 tab "Q6" per Nausea

_____
_____

I have counseled and dispensed meds from ER (init. ACP )  dea#_____

**Medication Orders at Pharmacy**

_____
_____

**DIAGNOSIS** (Circle A to add diagnosis, D to delete diagnosis from problem list)

A D 1. Gastroenteritis
A D 2. _____
A D 3. _____
A D 4. _____
A D 5. _____

**DISCHARGE INSTRUCTIONS:**

___Patient verbalizes understanding of instructions.
___Patient info/instruction sheet (type): _____
___Education: _____

1. Small freq. fluids
2. Tylenol per HA
3. Phenergan to ↓ nausea
4. _____
5. Return if worse

Disposition: ☒Home ___Hostel ___Jail ___Family in Bethel ___Admission

___Transfer to (accepting physician)_____

Follow-up: _____

Needs at F/U: _____

Condition at DC/Transfer: ☒Good ___Fair ___Critical

Time of DC / Transfer: _____

_Alyssa Perry PAC_          4-2-11     22:35
Provider Signature          date       time

A. Perry PAC
Provider Printed Name

Form #:  YK00100_v4.ER    er-hp-adult-012010-100.pdf    Rev. Date 01/2010

| APL | DIS | Initials/Code |
|---|---|---|

Primary Provider

**Time in room:** 1602  rm #: 3  Initial assessment time: 1635
☑ No acute distress

**Time: Check in:** 1535  **Triage:** 1537

**Chief Complaint** N/V dizziness
**ESI:** 1 2 3 ④ 5   visual disturbance

**General Appearance**
Distress: ☐ mild ☐ moderate ☐ severe
☑ Alert ☐ Anxious ☐ Decreased LOC

**Vital Signs**
**Temp** 97.4  **BP** 140, 104  **HR** 110  **Weight:** 57.9 kg
**RR** 24  **SpO2** 99 % on RA

**Neurological** Loss of consciousness ☐ Yes ☑ No
☑ Oriented X 3  ☐ Disoriented to person / place / time
☐ Confused  ☐ Weakness  ☐ Sensory loss

**Pain:**



| 0 | 2 | 4 | 6 | 8 | 10 |

I have no pain / I have little pain / I have moderate pain / I have more pain / I have very severe pain

**HEENT**
☐ Normal head                    ☑ Normal head
☐ Normal eyes  ☐ Red conjunctiva R / L  ☐ Exudate R / L
☐ Normal mucous membranes  ☐ Drainage: nasal  ☐ ear R/L
☐ Drooling  ☐ Dry

**FLACC:** NKA  6/10 HA pain

**Allergies:** NKA  ☐ NKDA
**Medications:** Allkac thiota  ☐ None:

**Respiratory**
Distress: ☐ Mild ☐ Moderate ☐ Severe ☑ None
**Breath Sounds:** ☑ Normal  ☐ Wheezing  ☐ rales
☐ Rhonchi  ☐ Decreased  ☐ Retractions  ☐ Splinting
☐ Chest non-tender  ☐ Accessory muscle use

**Complaint** HA pain **Started** 2-3 HA **Hrs / Days** ago
nausea  vomiting
and visual disturbances

**Cardiovascular System** ④ Dizziness ☐ Regular rate
☑ Tachycardia  ☐ Bradycardia  110
**Pulse:** ☑ strong  ☐ deficit  **Skin:** ☑ Warm and dry
☐ Cool  ☐ Diaphoretic  ☐ Pale  ☐ Cyanotic  ☐ Mottled
☐ Cap refill <2 seconds  ☐ Cap refill > 2 seconds

**Cough:**                **Sore Throat**
**Fever:**                **Nausea/Vomiting** ④
**Diarrhea:**             **Difficulty Breathing:**
**Chest Pain**           **Laceration / Wound:**
**Abdominal Pain:**      **Limb/Extremity Injury/Deformity:**

**GI / GU** N/V 3x today. ④ Dizziness
**Abdomen:** ☑ Normal  ☐ Distended  ☐ Guarding  ☐ Rigid
**Tenderness:** ☐ None  ☐ Epigastric ☐ LUQ ☐ RUQ ☐ LLQ ☐ RLQ
**Bowel Sounds:** ☐ None  ☑ Present, Last BM  ☐ N/A
**Flank Pain:** ☐ Left  ☐ Right  ☐ Dysuria  ☐ Hematuria ☐ Urgency
**Frequency:**            Fetal Heart Rate:

**PMH** ☐ Negative  HTN,
☑ Heart Disease ☑ Hypertension ☐ Diabetes: insulin?
G  P  Ab  pregnant / postmenop / hyst      BTL
LMP: unknown
7/2/11

**Extremities**                ☑ Non tender
☐ Tenderness:  Location
☐ Moves all extremities  ☐ Limited ROM
☐ Pedal edema  ☐ No pedal edema

**Psych/Social:** None
**Suicidal Ideation:** None  **Homicidal Ideation:** None
**Depressed:** ☑ No  ☐ Yes: 1 2 3 4 5
**Do you feel safe at home?** ☑ Yes ☐ No  DV referral? ☐ Yes ☐ No
☐ Smoker  none  Drugs / Alcohol: none
**TB exposure? symptoms:** none

**Functional/Nutritional Assessment**
☑ Independent ADL  ☐ Assisted  ☐ Total Care
☑ Recent wt loss / gain  ☐ Well-nurished / hydrated
☑ Appears well  ☐ Obese  ☐ Malnurished

**Actions**
☑ ID Band applied  ☐ ID band verified  ☐ Side rails up x1 x2
☐ Gowned  ☐ Blanket provided  ☐ Belongings bagged
☐ Bed low position  ☐ Call light in reach  ☐ Head of bed elevated

**Historian:** ☑ Patient  ☐ Family  ☐ EMS
**Arrival mode:** ☑ Private  ☐ EMS  ☐ Police  ☐ Medevac
**Triage RN** [signature]

**Additional Findings** Pt states ⊖ PO, Odranka.
Pt c/c ⊖ other complaints. Currently
menstruating

[signature] Bonnie Corbin  4/2/11  1635
Nurse Signature & Printed Name  date  time

ER-nurserecord-adult-091310-331.pdf  Form #: YK00331_v2.em  Rev. Date: 09-13-10

**PATIENT INFORMATION**

CABALES, JACLYN                4755
4/02/11  MOOSE          049951
01016752147
BETHEL            E  EMR
Date of Service:

Case 3:14-cv-00101-JWS  Document 16-4  Filed 07/29/14  Page 95 of 100

Exhibit I
Page 1 of 2

| APL | DIS | Initials/Code |
|-----|-----|---------------|
| | | |
| | | |

## IV Starts

| Time | # | Site | Guage | Attempts | Complications | Init. |
|------|---|------|-------|----------|---------------|-------|
| 1635 | | R wrist | 20 | 1 | ⊘ | pw |

## IV Medication Infusion Record

| Start Time | Solution/med | Type/Pump | Rate ml/hr | Stop Time | Amt. Infused | Init. |
|------------|--------------|-----------|-----------|-----------|--------------|-------|
| 1 | 1725 | NS | Bolus | 500/hr | | 1000 | pw |
| Response: | ☑No change ☐ Improved | | | | | |
| 2 | 1856 | NS | | bolus | | 1000 | rw |
| Response: | ☑No change ☐ Improved | | | | | |
| 3 | 2000 | NS | | bolus | | 1000 | rw |
| Response: | ☐ No change ☐ Improved | | | | | |
| | Response: | ☐ No change ☐ Improved | | | | |

## Medications

| Time | Medication | Dose | Route | Site | Init. |
|------|-----------|------|-------|------|-------|
| 1830 | Zofran | 4mg | IV | | rw |
| Response: | ☐ No change ☑ Improved | | | | |
| 1830 | Toradol | 30mg | IV | | rw |
| Response: | ☐ No change ☑ Improved | | | | |
| 1857 | Zofran | 4mg | IVP | | rw |
| Response: | ☐ No change ☑ Improved | | | | |
| 2000 | Reglan | 10 mg | IVP | | rw |
| Response: | ☐ No change ☑ Improved | | | | |
| Response: | ☐ No change ☐ Improved | | | | |
| Response: | ☐ No change ☐ Improved | | | | |

## Procedures

| Time | Time out immediately before start of procedure by MD, RN to verify correct patient, correct procedure, correct side, correct position. | Init. |
|------|------|-------|
| | 12-lead EKG performed *notified* | |
| | Repeat EKG done x | |
| | Cardiac Monitor | |
| | UA cc/cath. | |
| | Pulse Ox          O2 @          VR | |
| | Foley          fr.          ml. return | |
| | Lab drawn / sent by  ☑ ED ☐ tech ☐ nurse ☐ lab | |
| | Results back | |
| | Blood culture X1, X2 | |
| | to xray w/monitor / nurse / O₂ / tech | |
| | Return to room | |
| | to CT w/monitor / nurse / O₂ / tech | |
| | Return to room | |

## Vital Signs

| Time | BP | P. | RR | T | SaO₂ | Rhythm | Pain | Pupils |
|------|----|----|----|----|------|--------|------|--------|
| 1635 | 136 | 77 | 16 | 98.5 | | | /10 | |
| 1835 | 134 | 80 | 16 | 96.8 | 100% | | 5/10 | |
| 2000 | 134 | 90 | 16 | | 100% | | 0/10 | 3/3 |
| 2200 | 124 | 86 | 16 | 98.0 | 95% | | 0/10 | 3/3 |

## Respiratory Reassessment

| | | |
|---|---|---|
| Time | 2000 | 2200 |
| Pulse OX | 100% | 95% |
| Respiratory Rate | 16 | 16 |
| Pulse | 90 | 86 |
| Breath Sounds | CTA | CTA |
| Peak Flow | | |
| Init. | rw | rw |

Intake: _____  Output: _____

☑ IV / Saline lock discontinued  Total amt. Infused: **3,000**
Time: **2230**  Initials: rw

## Disposition

Discharged: ☑ Home ☐ Hostel ☐ Jail in care of: ☐ AST ☐ BPD
Instructions: ☑ verbal ☑ written
☑ Patient verbalized understanding
Accompanied by: **Husband**
☐ Admit          Report to: _____  Time: _____
☐ Transferred to: _____
Report to: _____  Time: _____
☐ Transfer documentation completed
☐ Left AMA          ☐ LWBS          ☐ AMA Sheet refused

## Discharge Vitals

BP: **124/80**  HR: **81**  RR: **16**  Temp: **98.1**  SaO₂ **100%**
Pain level at discharge: **0** /10

## Condition

☐ Unchanged ☑ Improved ☑ Stable ☐ Other: _____
Depart time: **2235**
Mode: ☐ walk ☐ carried ☐ crutches ☑ wheelchair ☐ stretcher ☐ ambulance

## SBIRT Program

Total Value: _____  ☐ Positive ☐ Negative ☐ Screening Refusal

## Additional Comments:

2000 - Up to BR via w/chair, very pale & weak. Medicated for nausea, ⊘ vomiting noted.

## PATIENT INFORMATION

Acct. #: _____

CABALES, JACLYN MOOSE          4755
4/02/11          049951
01016752147
BETHEL          E EMR

| Signatures/printed name | Init. | Time |
|-------------------------|-------|------|
| rw | rw | 1630 |
| Nurse O'... N | rw | 223 |

ER-nurserecord-adult-091310-331.pdf    Form #: YK00331_v2.ern    Rev. Date: 09-13-10

NURSING          NURSING          NURSING          NURSING

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

CALL, HANSON & KELL, P.C.
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

JACLYN CABALES and JONATHAN
CABALES,

        Plaintiffs,

v.

ALBERT E. MORGAN, D.C., ARCTIC
CHIROPRACTIC BETHEL, LLC, and
CHRISTOPHER F. TWIFORD, D.C.,

        Defendants.

Case No.: 4BE-13-00082 CIV

## DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S INITIAL DISCLOSURES

Pursuant to Civil Rule 26(a)(1)(A-G), the following initial disclosures are provided to the parties as follows:

A. DEFENSES

General Defenses. On April 2, 2011, plaintiff Jaclyn Cabales went to Arctic Chiropractic, LLC. in Bethel for treatment by Albert E. Morgan, D.C., a licensed chiropractor with the State of Alaska. Dr. Morgan was seeing patients at Arctic Chiropractic, LLC. during the out of state vacation of defendant Christopher F. Twiford, D.C. While at Arctic Chiropractic plaintiff Jaclyn Cabales suffered from nausea, dizziness, and vision problems and was taken to the emergency room and later diagnosed as suffering from a stroke.

Dr. Twiford was not present during any of the events related to Ms. Cabales nausea, dizziness and vision problems on April 2, 2011, but he did

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S INITIAL DISCLOSURES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 1 of 7

**01/03/12 8:54AM JTaylor**
D called - states he had left the office March 18, 2011 for a couple of weeks; had a fill-in Dr. cover for him; Dr. Albert Morgan, DC filled in.

P has been treating since 2005 - office has treated P approx 40 times during that time period; last time D treated P was 3/15/11.

P apparently was suffering headaches for 4 - 5 days - called for appt; Dr Morgan advised P to come in. As Dr Morgan laid P down for exam, P rolled off table, threw up and had vision problems; P's husband came and took P to ER - P suffered stroke.

D has since learned that Dr Morgan does not carry malpractice insurance.

D works for Artic Chiropractic. Artic Chiropractic rec'd letter of rep from P's atty; P has since been in office and has been treated by massage therapist and has fully recovered.

Dr Morgan states he did NOT manipulate P on 4/2/11. No treatment was provided.


**01/06/12 8:37am JTaylor**
OCCURRENCE COVERAGE VERIFICATION

Date of Loss/Treatment Period: 4/2/11
Insured's Name: Christopher Twiford
Policy Number: CM00103520
Policy Period:
Policy Limits:

Corp Coverage:                    Effective Date of Corp Cvg:
Shared/Separate Limits:
Name of Insured Entity (if Y):

Policy Form: MP
Endorsements:


Comments:
License Verification:
Verified by:
Date Verified:

**01/06/12 1:20pm JTaylor**
CLAIMS-MADE COVERAGE VERIFICATION-53861

Date Reported in Writing: 1-4-12
Insured's Name: Christopher Twiford
Policy Number: CM00103520
Policy Period: 05/03/11 to 05/03/12
Retro Date: 05/03/06
Policy Limits: 1/3M

Corp Coverage: None                    Retro Date of Corp Cvg: NA
Shared/Separate Limits: NA
Name of Insured Entity: NA

Policy Form: CM2006 05/06
Endorsements: #06-2015 07/08
              #02CM-2000 07/99
              #02CM-2001 01/03
              #02CM-2002 07/99
              #02CM-2003 07/99
              #06-2028 07/07
              #06-2030 07/08

Comments: DC limits were increased from 500/1M to 1/3M effective 10/20/11. ███████
████████████
License Verification: Alaska license is active. Texas license is inactive and shows past disciplinary
actions.
Verified by: DW
Date Verified: 01/06/12

coverage ok'd - jt - 1-6-12

**08/15/12 1:15pm JElmquist**
Today D received a letter that P's atty intends to pursue a claim against Dr. Morgan and Artic
Chiropractic. D owns 5% of Artic Chiropractic. Dr. Walter Campbell is the primary clinic owner. D doesn't
think Artic was insured on the DOL. Dr. Campbell is on vacation in AK and without cellphone access for
the next 3 to 5 days.

D hasn't had any communication with Dr. Morgan who was filling in for D on the DOL, but doesn't
believe Dr. Morgan has PL coverage. D states Dr. Morgan is 70 yrs old and doesn't have an assets. D will
forward atty letter for review and coverage verification for Artic.

Case 3:14-cv-00161-JWS   Document 16-4   Filed 07/29/14   Page 99 of 100

00022

*Exhibit*
*Page* _____ 3 _ of _____

Exhibit DD
99 of 100

DATED at Anchorage, Alaska, this 17th day of May, 2013.

CALL, HANSON & KELL, P.C.
Attorneys for Defendant Christopher
F. Twiford, D.C.

By: _Michael J. Hanson_
Michael J. Hanson
ABA No.: 8611115

**CERTIFICATE OF SERVICE**
I hereby certify that a true and
correct copy of the foregoing was
☐ faxed ☐ hand delivered and/or
☑ mailed this 17th day of May,
2013 to:

Myron Angstman
Angstman Law Office
P.O. Box 585
Bethel, AK 99559

**CALL, HANSON & KELL, P.C.**
413 G Street
Anchorage, Alaska 99501-2126
Phone (907) 258-8864 • Fax (907) 258-8865

DEFENDANT CHRISTOPHER F. TWIFORD, D.C.'S INITIAL DISCLOSURES
*Cabales v. Morgan, Arctic Chiro, and Twiford,* 4BE-13-00082 CIV
Page 7 of 7