# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| JACLYN CABALES and JONATHAN CABALES, | |
| Plaintiffs, | 3:14-CV-00161-JWS |
| vs. | **ORDER AND OPINION** |
| ALBERT E. MORGAN, D.C., ARCTIC CHIROPRACTIC BETHEL, LLC, and CHRISTOPHER F. TWIFORD, D.C., | [Re: Motion at docket 58] |
| Defendants, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Third-Party Defendant. | |

## I. MOTION PRESENTED

At docket 58, Defendant Christopher Twiford, D.C. ("Twiford") filed a motion for partial summary judgment on claims of negligent hiring and negligent supervision. Plaintiffs Jaclyn Cabales ("Cabales") and Jonathan Cabales (collectively "Plaintiffs") respond at docket 62. Twiford replies at docket 65. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

In March of 2013, Plaintiffs filed a complaint in state court against Arctic Chiropractic Bethel, LLC ("Arctic Chiropractic"), Albert Morgan, D.C. ("Morgan"), and Twiford. Twiford is a licensed chiropractor employed at Arctic; he is also a 5% member of Arctic Chiropractic, a limited liability company. Morgan is a chiropractor who worked at Arctic Chiropractic in the spring of 2011 on a temporary basis while Twiford was on vacation.

Plaintiffs allege that on April 2, 2011, Cabales went to Arctic Chiropractic for treatment and received a chiropractic neck manipulation from Morgan.[1] The complaint alleges that Morgan damaged Cabales's right vertebral artery during his neck manipulation and that as a result of the damage she immediately vomited, felt dizzy, and began losing her vision. After contacting Cabales's husband, Jonathan Cabales, a staff member at Arctic Chiropractic, Brooke Arnett called Twiford to inform him about Cabales's symptoms, and Twiford told Arnett that Cabales should go to the Yukon Kuskokwim Health Corporation ("YKHC") Emergency Room and that Arnett should accompany Cabales there so she could inform the hospital of the circumstances surrounding the onset of Cabales's symptoms. It is also undisputed that Arnett informed Cabales that she needed to go to the emergency room and that at some point she offered to call an ambulance for Cabales. Jonathan Cabales arrived and drove Cabales to the emergency room. Arnett also went to the emergency room as directed by Twiford.

The complaint alleges that Morgan, Twiford, and Arctic Chiropractic staff failed to inform the doctors at YKHC about Cabales's recent neck manipulation. It is undisputed, however, that Cabales herself told a nurse at YKHC about her chiropractic treatment and about her subsequent symptoms. Jonathan Cabales also told the hospital that

---

[1] Arctic Chiropractic disputes Plaintiffs' allegations that she received a manipulation that day. However, for purposes of this motion, all evidence in favor of Plaintiffs must be taken as true.

Cabales had been at the chiropractor's office and had gotten sick. He also told staff members at YKHC that her chiropractor, Morgan, believed she could have had an aneurism. Jonathan Cabales eventually told Arnett she could go because Cabales was okay to talk for herself. The YKHC doctors diagnosed her with the flu and sent her home. Cabales returned to YKHC two days later, and the doctors then realized the seriousness of her condition and arranged to medevac her to Anchorage. During the departure preparation or during transport, Cabales suffered a seizure. The complaint alleges that Cabales's seizure and the damages stemming therefrom were the result of the negligent chiropractic care she received at Arctic.

Based on these allegations, Plaintiffs bring negligence and gross negligence/recklessness claims against Morgan and a negligence claim against Arctic Chiropractic. Additionally, Plaintiffs bring a claim of gross negligence/negligence and a claim of recklessness against Twiford in his individual capacity. The counts against Twiford allege that he owed "a duty to plaintiffs to exercise the degree of knowledge or skill of the degree of care ordinarily exercised under the circumstances by health care providers in the field or specialty in which [he] was practicing" and that he owed "a duty to plaintiffs as the person who supervised Morgan, Arctic Chiropractic and Arctic Chiropractic's staff" and that he assumed "a duty of care relative to Jaclyn through his instructions to Arctic Chiropractic" on April 2, 2011.[2] It alleges that he breached these duties by failing to make sure Plaintiffs were aware of the possible injury Cabales sustained from Morgan's treatment, to ensure that Cabales was otherwise immediately transported to the emergency room, to send the hospital Cabales's complete records, and to adequately supervise Morgan and the Arctic Chiropractic Staff.[3]

In January of 2014, Arctic filed a third-party complaint against YKHC in state court. The third-party complaint asserts a claim for "Apportionment of Damages"

---

[2] Doc. 13-6 at pp. 12-13.

[3] Doc. 13-6 at p. 14, ¶ 7.

against YKHC under AS 09.17.080, alleging that the YKHC doctors' misdiagnosis, and the subsequent treatment delay, caused Cabales's seizure and thus at least some of the fault should be allocated to YKHC. YKHC is deemed to be part of the Indian Health Service, and thus any medical malpractice actions against YKHC are deemed to be actions against the United States under the Federal Tort Claims Act ("FTCA").[4] In June of 2014, YKHC removed the action to this court. The United States was then substituted as the third-party defendant.[5]

The United States moved to dismiss any claims for damages or monetary recovery against the United States due to Plaintiffs' failure to file a timely claim under 28 U.S.C. § 2401(b). The court granted the motion during an oral argument heard on December 8, 2014. The court also denied Plaintiffs' request to abstain from exercising jurisdiction over the matter. Twiford now moves for partial summary judgment as to the claims against him premised on negligent supervision and negligent hiring.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to

---

[4] See doc. 7.

[5] Doc. 8.

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

-4-

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[10] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[11] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[12] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[13] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[14]

## IV. DISCUSSION

### A. Negligent Hiring

Twiford asks that the court grant summary judgment in his favor as to Plaintiffs' claim for negligent hiring. After due consideration of the complaint, the court is unable to discern a negligent hiring claim against Twiford. Neither party provides any citation to the record when discussing this claim. The most recent complaint the court is able to

---

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[10] *Id.* at 323.

[11] *Id.* at 323-25.

[12] *Anderson*, 477 U.S. at 248-49.

[13] *Id.* at 255.

[14] *Id.* at 248-49.

locate is the First Amended Complaint. That document was not included in the removal notice at docket 1. Instead, the United States provided the First Amended Complaint when it filed the complete state record with the court.[15] While the case was still pending in state court, Plaintiffs moved for leave to file a Second Amended Complaint to clarify that they wish to bring a negligent hiring claim against Twiford. However, given the court's review of the record provided, the state court never ruled on that motion before it was removed, and Plaintiffs have not brought the matter to this court's attention or asked for leave to amend. Regardless, to the extent the First Amended Complaint can be read to contain a claim for negligent hiring, summary judgment in favor of Twiford is warranted.

Generally, an employer has a duty to exercise reasonable care in making a decision to hire an employee.[16] Twiford argues that he cannot be individually liable for hiring Morgan because the record establishes that Morgan worked for Arctic Chiropractic, not Twiford, and he argues that the fact that Twiford is a member with an interest, Arctic Chiropractic does not make Twiford individually liable for hiring Morgan. Twiford fails to acknowledge that generally an agent is liable for his or her own torts, notwithstanding the fact that the person may have acted for the company or under directions of another.[17] Instead, he merely assumes that the duty to carefully hire an employee only falls on the employer and not the agent of the employer who is responsible for or assumes hiring duties, as Twiford did here. The parties do not cite, and the court could not locate, any Alaska case discussing whether an LLC member who directly participates in hiring employees owes a duty to third parties to competently

---

[15] Docs. 12-15 (check).

[16] *See Di Cosala v. Kay*, 450 A.2d 508, 514-15 (N.J. 1982) ("[P]ersons must use reasonable care in the employment of all instrumentalities—people as well as machinery—where members of the public may be expected to come into contact with such instrumentalities.").

[17] *Austin v. Fulton Ins. Co.*, 498 P.2d 702, 704 (Alaska 1972); *Ranes & Shine, LLC v. Macdonald Miller Alaska, Inc.*, No. S-15222, 2015 WL 1958657, at * 7 (Alaska May 1, 2015).

hire those employees. However, the court need not consider the issue because even assuming Twiford did have such a duty, the duty did not extend as far as Plaintiffs assert.[18]

The tort of negligent hiring is not based on vicarious liability. Rather, the employer is deemed directly liable for exposing the public to an employee who is a known danger or for hiring an improper person to do work that involves risk of harm to others.[19] The tort of negligent hiring generally focuses on whether the employer should have known that hiring the employee created a particular risk and that particular risk then materializes.[20] In other words, there must be some evidence that the employer knew or should have known of the employee's incompetence or unskillfulness or the employee's propensity for the conduct that caused the injury.[21] Thus, the duty imposed on an employer is to hire a competent and non-dangerous employee. Twiford discharged this duty. There are no issues of fact as to Morgan's qualifications or experience. There is nothing on the record to suggest that Morgan had a propensity to engage in negligent manipulations, had caused prior injuries, or was unqualified or inexperienced so as to be dangerous to Arctic Chiropractic's patients.

---

[18] *Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1314 n.4 (Alaska 1993) (noting that the dispute involved the precise nature and extent of the defendant's duty to act and not the nature and extent of the act undertaken, which was undisputed, and thus it was a question of law that could be decided at the summary judgment stage).

[19] Restatement (Second) of Torts § 317 cmt c (1965); Restatement (Second) of Agency § 213 cmt d (1958); *see also Kroll v. Paul*, 1993 WL 13563648, at *1 (Alaska Oct. 6, 1993).

[20] *See Phillips v. TLC Plumbing, Inc.*, 172 Cal. App.4th 1133, 1139 (2009).

[21] Restatement (Second) of Agency § 213 cmt d (1958) ("The dangerous quality in the agent may consist of his incompetence or unskillfulness due to his youth or his lack of experience considered with reference to the act to be performed. An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, he is subject to liability for harm caused by the vicious propensity."); *see also* Restatement (Third) of Agency § 7.05 cmt b (2006).

There is some dispute about whether Morgan was hired as an independent contractor rather than an employee. The distinction does not matter. An employer has a duty to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done.[22] Here, the evidence demonstrates that Arctic Chiropractic and/or Twiford met that duty. A contractor is incompetent if he or she lacks the necessary experience or skills and not simply because there was a previous lack of attention or diligence in applying such experience. In other words, the employer is directly liable for harm caused by the contractor's lack of skill or experience but not for harm caused by inattention or negligence.[23] Again, there is no evidence that Morgan lacked the proper credentials. Rather, the only evidence in the record regarding Morgan's qualifications demonstrates that he had many years of prior experience and had worked at other Arctic Chiropractic offices. Moreover, there is no evidence in the record that would otherwise suggest he lacked the requisite professional skills.

Plaintiffs stress that Twiford did not document the precautions he took when hiring Morgan, and thus there is no evidence to demonstrate that Twiford conducted a diligent investigation into Morgan's qualifications. However, Plaintiffs bear the burden of proof at trial on this issue. Twiford does not need to produce evidence to show that summary judgment is warranted; he only needs to point out the lack of any genuine dispute as to material fact.[24] Here, the extent of Twiford's duty was to hire a qualified chiropractor, and there is no evidence to suggest a disputed fact about Morgan's professional credentials or experience. Thus, it is Plaintiffs' burden to come forward

---

[22] Restatement (Second) of Torts § 411 (1965); *see also Sievers v. McClure*, 746 P.2d 885, 887 (Alaska 1987).

[23] Restatement (Second) of Torts § 411 cmt b (1965).

[24] *Celotex Corp.*, 477 U.S. at 323-25.

with some evidence to show that Morgan lacked the requisite qualifications and experience that an adequate vetting would have revealed.[25]

**B.    Negligent Supervision**

    **1.    Supervision of Morgan**

Plaintiffs' complaint alleges that Twiford was Morgan's supervisor and thus had a duty to oversee Morgan's treatment of Cabales. The complaint focuses only on Twiford's involvement after Cabales's symptoms arose.[26] Twiford asks that the claim against him based on his alleged failure to adequately supervise Morgan be dismissed, because he had no duty to oversee Morgan's treatment decisions. Indeed, in order to be liable for the injury Cabales alleges she suffered as a result of Morgan's chiropractic treatment, Twiford must have owed Plaintiffs a duty to supervise Morgan.[27] Whether a duty exists is a matter of law.[28] Here, there is no statute, regulation, contract, undertaking, preexisting relationship, or existing case law imposing a duty on Twiford, who was not Morgan's employer, to supervise the decisions made by Morgan, a qualified professional working at Arctic Chiropractic in Twiford's absence.[29] Thus, the

---

[25] *Anderson*, 477 U.S. at 248-49.

[26] The complaint does not set forth any allegation that Twiford should have provided instructions to Morgan before Morgan saw Cabales for treatment that day; rather, the allegations merely state that Twiford was negligent in his actions after Cabales saw Morgan and complained of symptoms. *See* doc. 13-6 at pp. 8-9, 14 (¶¶ 17, 47).

[27] "'In order to establish a cause of action for negligence, a plaintiff must show a duty of care owed to him by the defendant, a breach of that duty, and that damage was proximately caused by the breach.'" *Estate of Mickelsen ex rel. Mickelsen v. North–Wend Foods, Inc.*, 274 P.3d 1193, 1198 (Alaska 2012) (quoting *Shooshanian v. Wagner*, 672 P.2d 455, 464 (Alaska 1983)).

[28] *Mulvihill,* 859 P.2d at 1314 n.4; *Bolieu v. Sisters of Providence in Wash.*, 953 P.2d 1233, 1235 (Alaska 1998).

[29] *McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 106 P.3d 319, 322 (Alaska 2005).

court considers whether public policy requires the imposition of a duty by applying the following factors:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.[30]

"Foreseeability of harm is the most important factor, followed by the burden on the defendant and the consequences to the community."[31] The court concludes that the balance of factors does not support putting a duty on medical professionals in these particular circumstances. The foreseeability of harm presented here is low. Twiford was on vacation, and Cabales was under the care of another doctor; it was not foreseeable that the other doctor would not take the appropriate steps to treat Cabales. The burden on Twiford and other doctors in similar situations is too great. It would inhibit medical providers from taking a vacation for fear of exposing themselves to liability for the malpractice of substitute professionals. Moreover, the connection between Twiford's conduct and Cabales's injury is attenuated. Twiford did not recommend what particular chiropractic treatment Cabales should receive and was not otherwise involved in her treatment that day because Morgan was the attending chiropractor and Morgan did not call Twiford for consultation about Cabales's condition either before his chiropractic treatment or after her onset of symptoms. Even when Twiford became involved because of Arnett's phone call, his advice was minimal; he stated that Cabales be taken to the emergency room and did not recommend further chiropractic treatment or discuss the details surrounding her treatment that day or her symptoms. Indeed, Plaintiffs do not base their negligence claims on Twiford's advice.

---

[30] *Wiersum v. Harder*, 316 P.3d 557, 566 n. 39 (Alaska 2013) (citing *D.S.W. v. Fairbanks North Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)).

[31] *Wiersum,* 316 P.3d at 566.

-10-

Plaintiffs assert that Twiford had a duty to protect Cabales from Morgan's alleged malpractice based on their prior relationship with Twiford. They assert that because Twiford had been her chiropractor in the past, he had a continuing duty to protect her. Plaintiffs provide no persuasive argument to support this position. "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . a special relation exists between the actor and the other which gives to the other a right to protection."[32] The special relationships that give rise to a duty to protect are more in line with common carriers and their passengers or innkeepers and their guests, not physicians and their patients when a different physician is treating the patients.[33]

An employer can be liable for failing to adequately control the work of an independent contractor that results in physical harm when the employer retains a certain amount of control over the independent contractor's work, but the amount of control retained must be extensive. It is not enough that the employer has the right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations, or to prescribe alterations and deviations. Rather, "[t]here must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."[34] Here, there is no evidence that Twiford retained this amount of control over Morgan's treatment of patients in his absence.

### 2. Supervision of Arnett

Plaintiffs' allegations against Twiford are not just based on his alleged failure to supervise Morgan, but also on his alleged failure to supervise the other Arctic Chiropractic staff members, like Arnett. They allege that Twiford had a duty to ensure

---

[32] Restatement (Second) of Torts § 315.

[33] Restatement (Second) of Torts §§ 314A, 320.

[34] Restatement (Second) of Torts § 414 cmt c.

-11-

that Arnett complied with his instruction to take Cabales to the emergency room and provide the hospital with all pertinent information. Again, the parties dispute whether Twiford had a duty to supervise the staff members at Arctic Chiropractic that day. Regardless of whether Twiford assumed responsibility for supervising Arnett's actions that day, there is no evidence from which a jury could find the requisite element of causation. "Alaska follows the 'substantial factor test' of causation, which generally requires the plaintiff to show that the accident would not have happened 'but for' the defendant's negligence and that the negligent act was so important in bringing about the injury that reasonable individuals would regard it as a cause and attach responsibility to it."[35] While "determinations of proximate cause usually involve questions of fact within the province of the jury," proximate cause can be determined as a matter of law when reasonable minds could not differ.[36]

Here, there is no dispute that Cabales was taken to the emergency room, no later than one and a half hours later. Plaintiffs emphasize Twiford's failure to make sure Cabales was immediately taken to the hospital, but the primary allegation in the complaint is that the injury occurred when Morgan manipulated her neck and not while she was waiting at Arctic Chiropractic to be taken to the hospital. The seizures Cabales suffered, allegedly as a result of the April 2, 2011 manipulation, occurred two days later. Again, Twiford, the non-moving party, has demonstrated that there is no evidence in the record to create a disputed fact as to causation, and thus the burden shifts to Plaintiffs to come forward with evidence of causation. There is nothing to establish that a delay in getting to the hospital caused or worsened Cabales's injuries. While it is disputed as to whether Arnett discussed the circumstances with emergency room staff herself as instructed, it is undisputed that Plaintiffs themselves informed the hospital staff about her chiropractic treatment that day and that Jonathan Cabales told the hospital doctors

---

[35] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).

[36] *Id.*

-12-

about Morgan's concerns about an aneurism. The doctors nonetheless sent her home with a flu diagnosis. There is no evidence to suggest that if the hospital had received the same information through Arnett, the doctors would have made a different diagnosis. In other words, no reasonable mind could find that Twiford's alleged failure to follow through with his instructions to Arnett was an important factor in causing the injury.

**C.   Malpractice Claim**

Twiford argues that Plaintiffs have attempted to expand the complaint against Twiford in their response brief. Plaintiffs assert in their brief that not only did he breach his supervisory duties, also he assumed a duty as to Cabales's safety when he talked to Arnett on the phone and that he should have signed off on any treatment provided to Cabales, called an ambulance himself, and talked to the hospital doctors directly. Twiford correctly notes that the complaint does not extend quite so far. It does not allege that Twiford was responsible for Cabales's allegedly harmful chiropractic treatment that day. It does however allege that Twiford himself assumed a duty of care relative to Cabales when he got involved over the phone and that he breached his duty of care to Cabales by failing to inform the Plaintiffs about the potential seriousness of her symptoms, by failing to make sure Cabales was taken directly to the hospital, and by failing to provide records to the emergency room.  In other words, the complaint can be read to allege that he engaged in malpractice himself.  However, as noted above, evidence of causation is lacking here.  Plaintiffs must have some evidence that Cabales's injury would not have happened "but for" the defendant's negligence and that the negligent act was significant in bringing about the injury that reasonable individuals would attach responsibility to it."[37] As discussed above, there is no evidence presented to suggest that the one-and-a-half-hour delay in getting Cabales to the hospital caused or worsened the injury. There is no evidence from which a jury could infer that a phone

---

[37] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).

-13-

call to the hospital from Twiford or records faxed from Twiford would have made a difference in the hospital's treatment of Cabales. Plaintiffs admit that they informed the hospital about her chiropractor visit and about Morgan's concern. Responsibility for what the hospital did with such information does not fall on Twiford. The court concludes that reasonable minds could not differ.[38]

### V. CONCLUSION

Based on the preceding discussion, Defendant Twiford's motion at docket 58 is **GRANTED**.

DATED this 21st day of May 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[38] *Id.*