UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA


| JACLYN CABALES and JONATHAN CABALES, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | 3:14-cv-00161-JWS |
| vs. | ) ) | ORDER AND OPINION |
| ALBERT E. MORGAN, D.C., ARCTIC CHIROPRACTIC BETHEL, LLC, and CHRISTOPHER F. TWIFORD, D.C., | ) ) ) ) | [Re: Motion at docket 67] |
| Defendants, | ) ) | |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Third-Party Defendant. | ) ) | |

## I. MOTION PRESENTED

At docket 66, the court granted a motion for summary judgment in favor of Defendant Christopher Twiford ("Twiford"). Plaintiffs Jaclyn Cabales ("Cabales") and Jonathan Cabales (collectively "Plaintiffs") filed a motion for reconsideration at docket 67, arguing that the court erred in granting the motion. At docket 68, the court denied the motion for reconsideration as to Plaintiffs' assertion that a delay in getting Cabales to the hospital supports a claim against Twiford, but it requested a response from

Twiford as to the negligent hiring claim and the court's ruling in favor of Twiford on that claim.

## II. BACKGROUND

When granting Twiford's motion for summary judgment as to Plaintiffs' negligent hiring claim, the court determined that assuming Twiford even had a duty, which it did not definitively decide, the extent of any such duty was only that he hire a competent and non-dangerous employee. The court concluded that there was no evidence that Morgan was incompetent or dangerous.[1]

Plaintiffs filed the motion for reconsideration. In their motion, they emphasized that Twiford knew Morgan used a handkerchief to perform manipulations and that their expert's opinion was that such a practice is unusual and dangerous. In response to that argument, the court concluded at docket 68 that Plaintiffs' expert's opinion may well create a disputed issue of fact regarding the propriety of "handkerchief manipulations." However, the court also noted at docket 68 that even assuming the court were to conclude that there is a factual dispute about the safety of "handkerchief manipulations" which would foreclose summary judgment, that would not end the inquiry because the court would nonetheless have to then decide two issues the court identified but found unnecessary to reach in its original order: (1) whether or not Plaintiffs actually pled a negligent hiring claim against Twiford; and (2) whether or not Twiford individually may be held responsible for the engagement of Morgan by Arctic

---

[1] Doc. 66 pp. 5-8.

Chiropractic. Thus, the court directed Twiford to file a response that addressed all the remaining issues. Plaintiffs were allowed to reply.

### III. STANDARD OF REVIEW

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case.[2] However, as long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[3] That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice."[4]

### IV. DISCUSSION

While Twiford argues that Plaintiffs' complaint did not allege a negligent hiring claim, he nonetheless concedes that Plaintiffs' initial disclosures put him on notice as to their intent to raise such a claim. He acknowledges that he consented to litigate the issue despite Plaintiffs' failure to make sure the complaint was amended accordingly.

Twiford argues, however, that reconsideration is not appropriate because Plaintiffs' expert's opinion that handkerchief manipulations are unusual and dangerous does not create an issue of fact precluding summary judgment. The basis for his

---

[2] *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).

[3] *City of Los Angeles v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

[4] *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also Sch. Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

argument is that the expert and his opinion have not been properly qualified and should be excluded.  The court agrees with Plaintiffs' position that such an argument should not be made in a reconsideration response and that the expert's opinion at this stage creates an issue of fact regarding the safety of handkerchief manipulations.  However, even with that disputed fact, the court concludes that summary judgment in favor of Twiford is nonetheless warranted because Twiford cannot be held individually liable for the tort of negligent hiring and thus such a disputed fact is immaterial.

Alaska case law recognizes a cause of action for negligent hiring against an *employer* in certain situations.  It has noted "that an employer is liable to a third person for injuries inflicted upon him by an employee who has been retained in employment after the employer knows, or ought to know, that because of his incompetency or vicious propensities he is likely to assault persons during the course of his employment."[5]  Negligent hiring is usually presented as a claim of direct negligence by the hiring entity and not the individual agent conducting the hiring process and making the hiring decision.  Indeed, the dearth of case law involving a claim for negligent hiring against an employer's agent supports such a conclusion.

There is no Alaska case that specifically addresses the question of whether an individual administrative or supervisory employee may be individually liable for the tort of negligent hiring.  Plaintiff cites to *Ayulick v. Red Oaks Assisted Living, Inc.*,[6] for the proposition that an individual agent doing the hiring on the employing entity's behalf

---

[5]*Svacke v. Shelley*, 359 P.2d 127, 130 (Alaska 1961) (emphasis omitted).

[6]201 P.3d 1183 (Alaska 2009).

cannot be individually liable for the tort of negligent hiring. The holding in *Ayulick* is not that broad. There, the Supreme Court of Alaska merely upheld the trial court's directed judgment in favor of the individual who had recommended the dangerous individual for employment. The court concluded that the individual had discharged any duty she might have had. It did not specifically consider whether she, as the person recommending that individual for employment, had a duty in relation to the plaintiffs in the first place.

Whether a duty exists is a matter of law.[7] The court first looks to statutes, regulations, contracts, or other typical sources to determine whether an actionable duty exists.[8] If there is no duty imposed, the court determines whether the factual scenario "falls in the class of cases controlled by existing precedent."[9] Then, if no existing case law is similar, the court weighs certain public policy "factors that support and oppose the imposition of liability." Those factors are:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.[10]

---

[7]*Dore v. City of Fairbanks*, 31 P.3d 788 (Alaska 2001).

[8]*McGrew v. State Dep't of Health & Soc. Servs.*, 106 P.3d 319, 322 (Alaska 2005).

[9]*Dore*, 31 P.3d at 793.

[10] *Wiersum v. Harder*, 316 P.3d 557, 566 n. 39 (Alaska 2013) (citing *D.S.W. v. Fairbanks North Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)).

Here, there is no statutory or similar source imposing a legal duty on Twiford, as Arctic Chiropractic's hiring agent, to protect Plaintiffs from harm caused by another employee whom Twiford hired to work for Arctic Chiropractic. Case law, however, assists with the analysis. Alaska courts have "previously relied upon the Restatement (Second) of Torts to assist [the] determination of whether a defendant has a duty to protect a victim from third party harm."[11] Under the Restatement, a person generally has no duty to protect a victim from third party harm except when there is a special relationship between the defendant and the third party or between the defendant and the victim.[12] Here, there is no special relationship between Twiford and Morgan. Twiford was merely an employee of Arctic Chiropractic; he was not Morgan's employer. Also, there is no special relationship between Twiford and Plaintiffs. While Twiford was Cabales' chiropractor at Arctic Chiropractic in the past, the type of special relationships of concern under the Restatement are more specific. The special relationships identified in the Restatement are between common carriers and their passengers, innkeepers and their guests, landowners and their invitees, "and a victim and a defendant who takes custody of the victim under circumstances which deprive the victim of his normal opportunities for protection."[13]

The court finds a ruling by the Supreme Court of California in *C.A. v. William S. Hart Union High School District*[14] persuasive here. There, the court held that school

---

[11]*Dore*, 31 P.3d at 793.

[12]*Id.* at 793 (citing Restatement (Second) of Torts § 314 (1965)).

[13]*Id.* at 793-94 (citing Restatement (Second) of Torts §§ 315 cmt. c. & 314A & 320)).

[14]270 P.3d 699 (Cal. 2012).

personnel owed a duty of care when hiring and supervising employees to protect students from foreseeable injury at the hands of those employees. However, the potential legal responsibility of school district administrators for their hiring decisions stemmed from the "special relationship" they had with students under their custody and supervision.[15] It concluded that "[a]bsent a special relationship, there can be no individual liability to third parties for negligent hiring . . . ."[16]

Plaintiffs cite *Hill v. Beverly Enterprises-Mississippi, Inc.*[17] and *Bloxom v. City of Shreveport*[18] in support of their argument that an individual who makes a hiring decision within a company can be individually liable for that negligent decision. Those cases are distinguishable. In *Hill*, the court held that the administrator of a nursing home was potentially individually liable for negligent hiring and supervision, but the duty stemmed from state cases and statutes specifically related to nursing home administrators. In *Bloxom*, the defendant was a corporate officer of a taxi cab company and made the decision to hire a known registered sex offender to drive taxis for the company. The court acknowledged that a "common carrier is held not simply to a reasonable degree of care, but to the highest degree of care" and determined that given this imposition of a high degree of care, "the officer of such a company has an obvious duty to the public to properly vet job applicants prior to their employment."[19] There is no similar special

---

[15]*Id.* at 709.

[16]*Id.*

[17]305 F. Supp. 2d 644 (S.D. Miss. 2003).

[18]103 So.3d 383 (La. Ct. App. 2012).

[19]*Id.* at 391.

-7-

relationship here which would justify making Twiford himself liable for the hiring decision he made as an agent of Arctic Chiropractic. Ultimately, Arctic Chiropractor was Morgan's employer, not Twiford. Thus, liability for any negligent hiring falls on Arctic Chiropractic.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion at docket 67 is DENIED.

DATED at Anchorage, Alaska, this 7th day of August 2015.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE